**LASALLE BANK NATIONAL ASSOCIATION, f.k.a. LaSalle National Bank, Plaintiff,**

v.

**LEHMAN BROTHERS HOLDINGS, INC., Defendant.**

**Civ. No. H–01–2260.**

United States District Court, D. Maryland.

July 25, 2002.

John Henry Lewin, Jr., Gregory A. Cross, Paul D. Barker, Jr., Venable, Baetjer and Howard LLP, Baltimore, MD, for plaintiff.

Ralph N. Albright, Jr., Morgan, Lewis and Bockius LLP, Washington, DC, David R. Lipson, O'Melveny and Myers LLP, McLean, VA, William Olshan, Lehman Bros. Inc., New York City, for defendant.

## MEMORANDUM AND ORDER

HARVEY, Senior District Judge.

Pending in this civil action is a motion to compel production of documents filed by defendant Lehman Brothers Holdings, Inc. ("Lehman"). Defendant Lehman has moved the Court to enter an Order compelling plaintiff LaSalle Bank National Association ("LaSalle Bank") and non-party CRIIMI MAE Services Limited Partnership ("CMSLP") to produce numerous documents listed in a Privilege Log which references documents withheld by plaintiff under the work product doctrine and/or the attorney-client privilege. In support of that motion, defendant has filed a memorandum of law and various exhibits, including the Privilege Log itself, excerpts from depositions and a lengthy document produced by plaintiff but redacted in part. In its motion, defendant has also challenged the redactions made by plaintiff.

A response to defendant's pending motion has been filed by CMSLP, together with various exhibits. At the suggestion of the Court, CMSLP, which is not a party here, has submitted copies of the documents at issue for an *in camera* review by the Court. Recently, defendant Lehman has filed a reply memorandum together with additional exhibits.

The background facts of this litigation were briefly described in the Court's Memorandum and Order of March 7, 2002 and will not be repeated here. That discussion did not, however, explain the relationship of CMSLP to the matters at issue in this case. As previously noted, plaintiff LaSalle Bank is the trustee of a trust which holds mortgage loans purchased from Lehman. Under the Pooling and Servicing Agreement ("PSA") of November 1, 1997, the mortgage loans are to be serviced and administered by First Union National Bank ("First Union") as the Master Servicer and CMSLP, a limited partnership, as the Special Servicer.[1] Under the PSA, CMSLP performs specialized handling of defaulted loans, the servicing of a loan being transferred from the Master Servicer to the Special Servicer upon a loan default. Fol-

lowing a default, the Special Servicer has full power and authority to do or cause to be done "any and all things in connection with such servicing and administration which it may deem necessary or desirable." PSA, § 3.01(b). In its capacity as Special Servicer, CMSLP routinely engages counsel for advice regarding the handling of defaulted mortgage loans in any of the various transactions in which it is so acting. The documents withheld by plaintiff LaSalle Bank and challenged here by defendant Lehman are to be found in the files of CMSLP.

The defaulting borrower here was WDH Howell, LLC ("WDH Howell") which owned industrial property leased to Frequency Engineering Laboratories (the "FEL Facility") and located in Farmingdale, New Jersey. On or about April 18, 2000, the FEL Facility Loan was transferred to CMSLP for special servicing because of the borrower's default in making payments which were due. On or about August 3, 2000, CMSLP instituted a foreclosure action against the FEL Facility property. That action was stayed when WDH Howell filed for Chapter 11 bankruptcy protection on January 18, 2001. Later, on May 24, 2001, William D. Hurley ("Dr. Hurley") and the FEL Facility also filed for protection under Chapter 11 of the Bankruptcy Code. Dr. Hurley was CEO and Chairman of the FEL Facility.

During discovery, defendant Lehman served a subpoena on CMSLP seeking documents relating to the transaction at issue in this case. Some documents were produced but others were withheld on the grounds of privilege. According to defendant, the grounds asserted by plaintiff for withholding certain listed documents are not legally supportable. By way of the pending motion to compel, defendant seeks the following documents:

A.  Seven copies of CMSLP Business Plan;

B.  Six FEL Facility note sale and discounted payoff case documents;

C.  Three CRIIMI MAE legal budget documents;

---

1.  Parties to the PSA include, *inter alia*, First Union, CMSLP and LaSalle Bank.

D. Outline of environmental events at the FEL Facility;

E. One-page memorandum regarding litigation analysis related to FEL Facility breach claim;

F. Five-page memorandum regarding FEL Facility breach claim;

G. One-page e-mail dated April 27, 2001 regarding litigation analysis related to FEL Facility breach claim;

H. Five drafts of the CMSLP claim letter sent to Lehman;

I. Exhibit to breach claim case;

J. Twelve pieces of correspondence between CMSLP and lawyers regarding litigation strategy on FEL Facility loan;

K. Three unidentified handwritten notes; and

L. Redactions in running status report.

Some of these documents have been withheld by CMSLP under the work product doctrine, others have been withheld pursuant to the attorney-client privilege, and several have been withheld under both theories.

## I

### Applicable Principles of Law

The purpose of the attorney-client privilege is to encourage the complete disclosure of information between a client and his attorney. Decisions of the Fourth Circuit and of this Court discussing the attorney-client privilege have applied the formulation set forth by Judge Wyzanski in *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357 (D.Mass.1950). That formulation is as follows (89 F.Supp. at 358–59):

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily ei-

ther (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*See NLRB v. Harvey*, 349 F.2d 900, 904 (4th Cir.1965); *Brink v. DaLesio*, 82 F.R.D. 664, 674 (D.Md.1979); and *Cardin v. Charter Med. Corp.*, 1987 U.S. Dist. LEXIS 15847, at *2–3 (D.Md.1987).

The attorney-client privilege protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

As set forth in Rule 26(b)(3), the work product doctrine prohibits a party from obtaining discovery of materials prepared in anticipation of litigation, absent a showing both of substantial need and of an inability to obtain, without undue hardship, the substantial equivalent of the materials sought. The purpose of the work product rule is to insure that attorneys will freely develop litigation materials and render legal advice in the course of trial preparation. *Cardin*, 1987 U.S. Dist. LEXIS 15847, at *5; *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir.1982). The test is whether in light of the nature of the documents and the particular facts of a given case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation or whether they must be deemed to have been prepared in the ordinary course of the company's business. *APL Corp. v. Aetna Casualty & Surety Co.*, 91 F.R.D. 10, 18 (D.Md.1980).

## II

### Discussion

Defendant notes that many of the documents at issue have been prepared by the staff of CMSLP. Since CMSLP is not a party to this action, defendant argues that, to the extent that these documents contain references to advice given by lawyers for plaintiff LaSalle Bank, the privilege has been

waived by disclosure of the information to CMSLP.

For several reasons, there is no merit to this argument. Both plaintiff LaSalle and CMSLP are represented by the law firm of Venable, Baetjer and Howard, LLP ("Venable"). Moreover, defendant in its motion and original supporting memorandum ignores the so-called "joint defense" or "common interest" doctrine.[2] *See In re Grand Jury Subpoenas, 89–3 & 89–4,* 902 F.2d 244, 249 (4th Cir.1990).

▪▪▪ The Fourth Circuit has held that any voluntary disclosure by the client to a third party waives the attorney-client privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter. *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). However, the Fourth Circuit has also recognized that persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other in order to more effectively prosecute or defend their claims without waiving privileged attorney-client communications. *In re Grand Jury Subpoenas,* 902 F.2d at 249. This "joint defense" or "common interest" doctrine is an extension of the attorney-client privilege and presupposes the existence of an otherwise valid privilege. *Id.* In determining the applicability of the privilege, the focus is not on when the documents were generated but on the circumstances surrounding the disclosure of the privileged documents to a jointly interested third party. *Id.*

It is quite apparent on the record here that LaSalle and CMSLP share a common interest in this litigation. CMSLP is the Special Servicer charged by way of the PSA with the responsibility of handling defaulted loans like the one at issue here. LaSalle

Bank and CMSLP are represented by the same attorneys. It was CMSLP, as Special Servicer, which brought this suit in the name of LaSalle Bank. LaSalle Bank (as Trustee), First Union (as Master Servicer), and CMSLP (as Special Servicer) share a common legal interest in protecting the rights of the certificate holders. These parties have acknowledged their "common interest" relationship by way of a formal Agreement dated March 13, 2002. Pursuant to this Agreement, shared communications are to remain confidential, and these parties therein confirm that they and their counsel have not waived and will not waive any privilege as to any such communications or as to their work product.[3]

▪▪▪ Under all the circumstances here, the Court concludes that there has been no waiver of the attorney-client or work product privilege when documents were exchanged between LaSalle Bank and CMSLP in the course of an ongoing common enterprise formed to prosecute claims against Lehman or WDH Howell arising as a result of the default here. No waiver occurs when documents are shared between parties with common legal interests. *Cardin,* 1987 U.S.Dist. LEXIS, 15847 at \*8.

▪▪▪ In its reply memorandum, defendant goes to great length in arguing that the "common interest" rule is inapplicable in this case.[4] But nowhere in its elaborate discourse is there any discussion of the terms of the PSA which is the key document establishing the existence of the common legal interest existing between LaSalle Bank and CMSLP. Facts of record here, including the PSA and the documents withheld themselves, show that CMSLP may validly claim protection under both the attorney-client privilege and the work product doctrine, that LaSalle Bank and CMSLP have a common legal in-

---

2.  Defendant does discuss this doctrine in its reply memorandum.

3.  Defendant objects to the Court's consideration of the Agreement of March 13, 2002, which acknowledged the parties' "common interest" relationship. But this Agreement does no more than confirm the existence of the common legal interest which exists between LaSalle Bank and CMSLP and which was created by the PSA.

4.  Defendant's reliance on *SR Int'l Bus. Ins. Co. v. World Trade Center Properties LLC,* 2002 WL 1334821, 2002 U.S.Dist. LEXIS 10919 (S.D.N.Y. 2002) is misplaced. The non-party in that case did not, as did CMSLP here, have an identical legal interest with the other parties which would permit it to rely on the attorney-client privilege.

terest and that they have cooperated through an ongoing common enterprise to formulate and implement a common legal strategy. *See Baltimore Scrap Corp. v. The David J. Joseph Co.*, 1996 WL 720785, at \*12, 1996 U.S. Dist. LEXIS 18617, at \*32–33 (D.MD. 1996). Nor is there any merit to defendant's contention that CMSLP as a non-party cannot rely on the work product doctrine. The Fourth Circuit has held that the "common interest" rule applies not only to the attorney-client privilege but also to communications protected by the work product doctrine. *In re Grand Jury Subpoenas*, 902 F.2d at 249. Once it is established that a document was prepared in anticipation of litigation, work product immunity protects documents prepared by or for a representative of a party, including its agent. *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 221 (S.D.N.Y.2001).

In the memorandum which defendant has filed in support of its motion to compel, defendant concedes that to the extent that documents at issue "involve communications with counsel about the actual foreclosure or bankruptcy proceeding with the FEL Facility borrower, we do not seek their production." (Defendant's Memorandum, p. 11). It is apparent from a review of the documents at issue that many of them do indeed relate only to the foreclosure action previously instituted or to the bankruptcy proceedings involving WDH Howell or Dr. Hurley. Others compare the prospects of obtaining a recovery for the trust in the foreclosure and bankruptcy proceedings with the strength of plaintiff's claim asserted in this case against Lehman.

In its motion, defendant has challenged as improperly withheld twelve different categories of documents, listed as Categories A. through L. under the heading "WITHHELD DOCUMENTS AT ISSUE." At the request of the Court, counsel for CMSLP has submitted to the Court for *in camera* review a bulky folder containing forty-one tabs. All of the documents withheld by plaintiff as well as the redacted document are contained in this folder. Bearing in mind the arguments advanced by each party in support of or in opposition to the pending motion to compel,

the Court has now had an opportunity to review all of the documents included in the *in camera* submission of CMSLP.

It is apparent from the Court's review of the pleadings, memoranda and the documents withheld that defendant's pending motion is a strenuous attempt to ascertain during discovery the confidential mental processes and strategies of counsel for LaSalle and CMSLP. It is precisely this type of endeavor which the attorney-client privilege and the work product doctrine were intended to prevent. The documents at issue are replete with discussions of the strengths and weaknesses of plaintiff's claims against defendant Lehman and of prospective strategies to be employed by plaintiff in its effort to prevail in this litigation.

(A)

*Seven Copies of CMSLP Business Plan*

Defendant first seeks production of seven copies of so-called "Business Plans" of CMSLP. The first four, bearing Bates Nos. CMSLP001126–32; 1235–42, 1253–59 and 1353–60, are multiple copies of the same July 17, 2000 "Business Plan" prepared by an employee of CMSLP. Authority is requested in this document to engage counsel to initiate a foreclosure action against the borrower's property and to also consider pursuit of a receivership action. This document was prepared after consultations with an attorney retained to handle prospective litigation against WDH Howell and Dr. William Hurley. The four documents are protected by the attorney-client privilege and the work product doctrine.

The next two documents in this category are designated "Business Plan Update" and are dated April 9, 2001 and April 18, 2001 (Bates Nos. CMSLP 001208–17 and CMSLP001218–1224). These documents are updates of the July 17, 2002 Business Plan and indicate that they were prepared with the assistance and advice of counsel. They discuss various alternative strategies, including whether foreclosure and bankruptcy proceedings should be pursued and whether suit should be filed against Lehman. There is reference to advice of counsel concerning the pros and cons of undertaking litigation

against Lehman. These documents need not be produced.

The final document in this category is entitled "Annual Business Plan Update" and is dated October 18, 2001. It was drafted by D.J. Morakis ("Morakis") who is employed by CMSLP as an asset manager. It discusses the status of the bankruptcy proceedings against WDH Howell and Dr. Hurley and also the status of this case which was then pending in this Court. Authority is requested for the continuation of these litigations, and there are references to advice received from counsel concerning the prospects of prevailing in these litigations. The document in question is clearly protected by the work product doctrine and the attorney-client privilege.

It is specious for defendant to suggest that plaintiff's attorney-client privilege was waived when Morakis was permitted to testify about "Business Plan" documents at his deposition. Nothing of substance relating to a Business Plan of CMSLP was revealed by Morakis during his deposition. He repeatedly stated that he could not recall the text or contents of the plan although he had seen it. Testimony of this sort hardly amounts to a valid waiver of the privilege. There was no inadvertent disclosure of the contents of the Business Plan documents because there was no disclosure at all of what they contained.

There is no merit to defendant's argument that these Business Plan documents are akin to the Servicing Plan mentioned in § 3.12(a) of the PSA. A review of these Business Plan documents indicates that they cannot be characterized as being comparable to CMSLP's Plan for Servicing under the provisions of § 3.12(a). Although termed "Business Plans", these documents rather contain alternative proposals made to CMSLP management for undertaking various legal proceedings whereby the loss sustained by the trust as a result of the borrower's default might be mitigated. In spite of their title, these "Business Plan" documents were not prepared in the ordinary course of the business of CMSLP but were rather prepared

because of the prospect of litigation. *See APL Corp.*, 91 F.R.D. at 18.

Defendant complains that the documents referred to as Business Plans were not properly described in the Privilege Log. Such a contention is not material to the questions before the Court which has now undertaken an *in camera* review of the documents and has concluded that they are all protected by the attorney-client privilege and/or the work product doctrine.

(B)

*Six FEL Facility Note Sale
And Discounted Payoff
Case Documents*

These six documents have been withheld on the basis of the attorney-client and work product privileges. They were prepared by the staff of CMSLP on April 19 and April 20, 2001. As indicated hereinabove, there is no merit to defendant's contention that plaintiff's privileges have been waived as to these documents by the disclosure of information relating to this action to CMSLP, a nonparty.

Alternative strategies are discussed in these documents. Counsel's recommendations concerning the strength and weakness of prospective litigation against Lehman are included in these documents. They are protected by both the attorney-client privilege and the work product doctrine.

(C)

*Three CRIIMI MAE Legal
Budget Documents*

As defendant notes, these three documents contain information relating to projected attorneys' fees to be incurred by CMSLP. From its *in camera* review, the Court concludes that they are not relevant to the matters at issue in this case.

The attorneys' fees mentioned are those charged by several different New Jersey law firms in conducting foreclosure proceedings on behalf of CMSLP. The information in question in no way relates to this suit. The documents sought therefore need not be produced by plaintiff or CMSLP.[5]

---

**5.** In its reply memorandum, defendant concedes that it is not entitled to documents in Category C

### (D)

*Outline of Environmental Events
At the FEL Facility*

The document in question is four pages in length and has been identified as CMSLP006959–62. It was prepared by Morakis after consultation with counsel in an effort to assist counsel in preparing its case against defendant Lehman.

From its review of the document in question, the Court is satisfied that it was prepared in anticipation of litigation and is protected from disclosure by the attorney-client privilege and the work product doctrine. Although it contains a recitation of various facts, the manner in which the discussion has been organized and the comments of Morakis indicate that it was to be used in connection with the pending suit. Morakis was here providing information to attorneys to enable them to give sound and informed advice to CMSLP concerning LaSalle Bank's suit against Lehman.

### (E)

*One-page Memorandum Regarding
Litigation Analysis Related to
FEL Facility Breach Claim*

Listed as Bates No. CMSLP007233, this document was prepared by CMSLP on May 1, 2001, three months before this civil action was filed on August 1, 2001. It was prepared after the rejection by Lehman of plaintiff's claim against it for breach of contract. This one-page memorandum recites various facts in anticipation of the filing of a suit against Lehman. Accordingly, the Court concludes that the document in question is protected by the work product doctrine and need not be produced.

### (F)

*Five-page Memorandum Regarding
FEL Facility Breach Claim*

Defendant Lehman contends that this document was prepared by a non-lawyer staff member of CMSLP and cannot be protected by the work product doctrine. The Court must disagree.

because they relate solely to communications

The one-page memorandum dated August 16, 2001 attaches several pages which contain the heading "Breach Claim Case." Identified as CMSLP007293, the memorandum indicates that its purpose is to memorialize the strategy to be used in pursuing a breach of contract claim against Lehman. The attached pages describe the nature of the alleged breaches, discuss the merits of the claims, and recommend that the breach of contract claim be pursued.

Clearly, these documents are protected by the work product doctrine.

### (G)

*One-page E–Mail Dated April 27, 2001
Regarding Litigation Analysis Related
to FEL Facility Breach Claim*

In claiming that this one-page memorandum was improperly withheld by plaintiff, defendant complains that it was prepared by personnel of CMSLP and that there is no litigation between CMSLP and Lehman. However, a copy of this inter-office e-mail was sent to Robin Green, Esq., an attorney who was hired by CMSLP to assist in matters relating to the FEL Facility loan. The date of the memorandum is April 27, 2001.

The memorandum refers to a conversation held with a representative of Lehman who, *inter alia*, took a position with respect to plaintiff's breach of contract claim completely opposite to that of CMSLP. Strategies relating to the prosecution of the claim against Lehman are discussed in the memorandum by a representative of CMSLP. From its review of the document, this Court is satisfied that it was prepared in anticipation of litigation and is protected by the work product doctrine.

### (H)

*Five Drafts of the CMSLP Claim
Letter Sent to Lehman*

These are four unsigned draft letters, two of which are dated November 29, 2000 and the others of which are dated December 8, 2000 and April 27, 2001. They were all prepared by counsel at the request of

about the foreclosure or bankruptcy proceedings.

CMSLP. Lehman received a final version of or a copy of a final version of one or more of these letters.

Defendant Lehman argues that the breach claim letter was ultimately received by it and that the draft of a letter is not privileged simply because it was prepared by an attorney. But these drafts contain notes and suggested amendments to the drafts. They accordingly disclose the thought processes of counsel in connection with plaintiff's claim against Lehman. These drafts are clearly protected by the attorney-client privilege and the work product doctrine.

### (I)

### *Exhibit to Breach Claim Case*

Defendant complains that it cannot determine from the CMSLP logs the nature of this exhibit or why it should be protected from disclosure. As indicated by the affidavit of Morakis, the document is an environmental timeline prepared by him to assist counsel in analyzing plaintiff's claim against defendant Lehman. It contains dates and comments in connection with the pending litigation against Lehman. Plaintiff has met its burden of showing that this document was protected from disclosure to defendant by the attorney-client privilege.

### (J)

### *Twelve Pieces of Correspondence Between CMSLP and Lawyers Regarding Litigation Strategy on FEL Facility Loan*

These documents are all printouts of e-mail messages sent by a representative of CMSLP to Robin Green, Esq. or from Ms. Green to representatives of CMSLP. Ms. Green was an attorney with Akin, Gump, Strauss, Hauer & Feld, a firm hired to assist CMSLP in connection with litigation related to the FEL Facility loan. These documents are communications to and from counsel which discuss aspects of a prospective breach of contract claim against Lehman.

Defendant argues that these communications cannot be protected because CMSLP is not a party to this case. As the Court has

concluded hereinabove, this argument is meritless. Under the circumstances of this case, the joint defense or common interest doctrine permits CMSLP to rely on the attorney-client privilege even though it is not a formal party to this case.

The documents challenged here clearly are protected by the attorney-client privilege and also by the work product doctrine.

### (K)

### *Three Unidentified Handwritten Notes*

These six pages represent handwritten notes taken by Morakis during conversations with New Jersey counsel and relate to litigation strategy in both the foreclosure action and the bankruptcy proceedings pending in New Jersey. Defendant has indicated that it is not seeking production of communications relating to the foreclosure or bankruptcy proceedings. In any event, the documents reflect communications with counsel which include discussions concerning litigation strategy. They are accordingly protected by the attorney-client privilege and need not be produced by plaintiff.[6]

### (L)

### *Redactions in Running Status Report*

The document at issue is an 82 page running log maintained by CMSLP from April 27, 2000 until May 3, 2002 (CMSLP010641–010723). There are numerous redactions, including many relating to the identity of legal counsel representing CMSLP at a particular time. Information concerning the law firms representing CMSLP or LaSalle Bank in various legal proceedings has already been provided to defendant. Many of the other redactions relate to communications to and from counsel in connection with the foreclosure action and the bankruptcy proceedings pending in New Jersey.

The Court has reviewed the redactions which relate to plaintiff's claim against Lehman. They all involve communications to or from counsel and reflect counsel's views of litigation strategies. Once again, defendant repeats the argument that no privilege can

---

6. In its reply memorandum, defendant concedes that it is not entitled to documents in Category K because they relate solely to communications about the foreclosure or bankruptcy proceedings.

be asserted by CMSLP about communications relating to LaSalle Bank's action against Lehman. This argument has been consistently rejected by the Court.

 Relying on *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992), defendant also argues that CMSLP's running log includes materials prepared in the ordinary course of business and is not a document which was prepared in anticipation of litigation and which is protected by the work product doctrine. But the running log does not lose all work product protection because it was used in making business decisions. A document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work product protection merely because it is intended to assist in the making of a business decision. *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir.1998).

Following its comparison of the redacted version of the CMSLP running log with the unredacted version of that same document, the Court concludes that an unredacted version of this running log need not be produced to defendant Lehman. The redactions were properly made on the basis of the attorney-client privilege and/or the work product doctrine.

### III

#### *Conclusion*

For all the reasons stated, this Court concludes that none of the many documents sought by defendant Lehman in its motion to compel need be produced by plaintiff LaSalle Bank. The documents requested are protected either by the attorney-client privilege or by the work product doctrine or by both. Moreover, the redactions challenged were properly made by plaintiff LaSalle Bank.

Accordingly, it is this _____ day of July, 2002 by the United States District Court for the District of Maryland,

ORDERED that defendant's motion to compel production of documents is hereby denied.