John DOE # 1, Columbia, SC, and John Doe # 2, Orlando, FL, Plaintiffs,

John and Jane DOE number 1, John and Jane Doe number 2, and John and Jane Doe number 3, Intervening Plaintiffs,

v.

WACHOVIA CORPORATION, 301 South College St., Suite 400 Charlotte, N.C. 28288–0013, and Wachovia Bank, N.A. (formerly known as First Union National Bank), Defendants.

No. CIV.3:03 CV 236.

United States District Court, W.D. North Carolina, Charlotte Division.

June 24, 2003.

Robert B. Long, Jr., Long, Parker & Warren, P.A., Asheville, NC, Stephen J. Kott, Patton Boggs, L.L.P., Greensboro, NC, Benjamin G. Chew, Patton & Boggs, L.L.P., Washington, DC, for Plaintiffs.

Robert W. Fuller, III, Thomas P. Holderness, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, George D. Ruttinger, Alexandre de Gramont, Crowell & Moring, LLP, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on numerous motions which will be addressed *seriatim.*

#### A. The motion to intervene

Wachovia consents to intervention of the John and Jane Does Intervening Plaintiffs (Intervenors). However, the caption will be amended as reflected above in order to resolve the discrepancy between the named Defendants, *i.e.,* the Plaintiffs sued Wachovia Corporation while the Intervenors sued Wachovia Bank, N.A. Both entities will be referred to as Wachovia.

#### B. The motions for leave to file John Doe complaints

These motions as well will be granted for the reasons stated therein.

## C. The motion by the Intervenors to seal the file

To the extent that certain pleadings are allowed to be filed under seal, the file will remain sealed. However, the Court will not seal the entire file of this matter.

## D. The motions to file affidavits under seal

The affidavits submitted by the Plaintiffs and Intervenors will be filed under seal. As a result, these motions will also be granted.

However, the complaints and motions for injunctive relief shall be made part of the public record. Exhibits to those pleadings which have been filed under seal shall remain sealed. Likewise, Wachovia's answers and responses shall be filed in the open record.

## I. THE ALLEGATIONS OF THE COMPLAINTS

According to Plaintiffs' amended complaint for injunctive and declaratory relief, the Plaintiffs are Wachovia clients who used the bank to facilitate and implement tax advice concerning investment strategies. Legal advice on tax matters was provided by the law firm of Jenkens & Gilchrist (J & G) and accounting advice was received from the accounting firm of KPMG, L.L.P. (KPMG). The Plaintiffs also allege that Wachovia communicated privileged and confidential information to J & G and KPMG in order to implement the legal and accounting advice concerning taxes provided by those entities.

On April 17, 2003, the Internal Revenue Service (IRS) served an administrative summons on Wachovia which sought documents and information related to interests in potentially abusive tax shelters as defined by 26 C.F.R. § 301.6112–1T. The summons also applied to investor lists which banks are required to maintain under that regulation. Wachovia's agents initially advised the Plaintiffs that they did not believe the bank was in possession of information which fell within the definitions set out on the summons. Later, however, Wachovia's agents determined that compliance with the summons was necessary. That resulted in this action and the motion for a temporary restraining order.

It is necessary to correct a portion of the Plaintiffs' amended complaint. Paragraph 27 contains the following allegations:

> On May 19, 2003, upon reviewing Plaintiffs' original Complaint and Motion for a Temporary Restraining Order, *the Court advised Wachovia not to disclose any information to the IRS* concerning Plaintiffs until the Court had an opportunity to review Wachovia's response to Plaintiffs' Motion. *The Court ordered Wachovia* to respond . . . .

**Amended Complaint for Injunctive and Declaratory Relief, filed May 29, 2003, at 5 (emphasis added).** The italicized portions of this paragraph are incorrect and are stricken *sua sponte* from the record. Through the staff of the undersigned, Wachovia was encouraged to reach an agreement with the IRS to postpone compliance until such time as Wachovia was able to file response. Wachovia was never "advised" not to comply with the summons; in fact, through great effort on the part of Wachovia's legal counsel, the IRS agreed to postpone compliance temporarily. Nor did the Court "order" Wachovia to respond; in fact, a date was set by Wachovia's counsel to which the Court agreed and which was later extended. Any suggestion that the undersigned was so impressed upon the reading of the Plaintiffs' pleadings that Wachovia was thereafter ordered to conduct itself in any manner is untrue. In fact, Plaintiffs' counsel was

told that the undersigned would not grant a temporary restraining order but would consider a motion for a preliminary injunction and would require an opportunity for Wachovia's version of the events to be set forth in the record.

The allegations of the Intervenors are similar except that they allege Wachovia was retained by engagement letter agreements to provide advisory services to them as part of their attorneys' legal representation. The Intervenors allege they provided confidential information to their attorneys, who in turn, disclosed it to Wachovia in order to assist the Intervenors in acquiring and selling interests in transactions that resulted in tax losses. Their claims are based on breach of fiduciary duty, replevin, a violation of the Right to Financial Privacy Act, 12 U.S.C. § 3401, *et seq.*, breach of contract, and injunctive relief to prevent a violation of the attorney-client privilege. They do not raise the accountant-client privilege as a ground for relief because there are no factual allegations involving an accountant relationship, *i.e.*, the Intervenors did not deal with KPMG. However, the only basis for relief raised by the Plaintiffs' amended complaint is the accountant-client privilege of 26 U.S.C. § 7525.

## II. STANDARD OF REVIEW FOR A MOTION FOR A PRELIMINARY INJUNCTION

As previously noted, the parties have been advised that the Court would not entertain the motion for a temporary restraining order, particularly in view of the agreement of the IRS not to compel compliance by Wachovia on a temporary basis.[1] *See, e.g., Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th

Cir.1999) (The purpose of a temporary restraining order is to preserve the status quo pending disposition of a motion for a preliminary injunction.).

In this circuit, the entry of a preliminary injunction is governed by the four-part test set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir.1977), which requires a court to consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. But if the balance of hardships is substantially equal as between the plaintiff and defendant, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success. [The Circuit] review[s] the grant or denial of a preliminary injunction for abuse of discretion, recognizing that preliminary injunctions are extraordinary remedies to have been met.

---

1. Nor did the Court consider the stringent standards of Federal Rule of Civil Procedure

involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 271–72 (4th Cir.2002) (footnotes, internal quotations, and citations omitted). Because the undersigned finds the record more than sufficient to render a ruling, no hearing is necessary.[2] *United States v. Cohen*, 152 F.3d 321, 326 (4th Cir.1998) (The district court may schedule such hearings as it deems necessary.).

## III. DISCUSSION

The Plaintiffs and Intervenors argue that the disclosure of their identities will constitute irreparable harm because it will be tantamount to disclosure of the privileged information provided by the Plaintiffs to KPMG and J & G and by the Intervenors to Wachovia and J & G. The Intervenors also claim that the sweeping nature of the summons will require Wachovia to disclose confidential information as well as their identities. The irreparable harm, they both argue, stems from the disclosure of privileged communications against the wishes of the holder of the privilege.

The IRS summons, in accordance with § 301.6112–1T, requires Wachovia to produce information which it is required by that regulation to maintain for any potentially abusive tax shelter without regard to whether the shelter is, in fact, abusive. The letter of engagement between Wachovia and the Plaintiffs [3] contains the following:

> We have been working with you to analyze your financial situation and goals. As a result of this review, *we understand that you wish to consider implementing certain sophisticated investment strategies which have been developed by independent investment planners* ("Investment Strategists") *and are engaging those Investment Strategists in separate engagement letters to work with you and your legal and tax experts* ("your Consultants").
>
> . . . . .
>
> By signing this letter, you engage [Wachovia] to continue to work with you and your Consultants in collecting and analyzing information you and they provide concerning your financial situation and to provide that information and our financial recommendations to you, your Consultants and the Investment Strategists for use in your financial planning. *You further acknowledge that your relationship with your Consultants and the Investment Strategists are directly with each of those persons or organizations and are governed by the terms of your engagement of each of them.*
>
> . . . . .
>
> [The] invoice [for fees] will be sent *after the Investment Strategy has been executed and the supporting tax opinion from the Investment Strategist(s) and/or Consultants has been prepared and delivered to you.*
>
> . . . . .
>
> You agree that [Wachovia] will have no liability for the acts or omissions of your Consultants or the Investment Strategists. *You further acknowledge and agree that [Wachovia] is not making and will not make, as a part of this engagement, legal recommendations or*

---

**2.** In fact, the Plaintiffs have flooded the Court with sealed documents, supplemental responses, replies, *etc.*, despite having been informed that it is the custom of the undersigned not to allow such additional filings.

**3.** There is no letter of engagement in the record between Wachovia and the Intervenors.

*advice to you and will have no liability to you … in connection with your implementing or deciding not to implement any strategies, whether or not suggested by your Consultants or any Investment Strategist. You acknowledge that any strategies that you decide to implement may carry substantial investment risk as well as substantial risks of audit, legal challenge and disqualification.*

Affidavit of Alex E. Sadler, *attached to* Defendant's Response to Original Motion of Plaintiffs for Temporary Restraining Order and Application for Preliminary Injunction, filed May 30, 2003, at Exhibit F (emphasis added).

As to the Intervenors, Wachovia had an agreement, not with the individual taxpayers, but with J & G. "We have advised [taxpayer] that for purposes of this engagement we are acting as a service provider to J & G, not as a service provider to [taxpayer]." Exhibit A, *attached to* Affidavit of Jane Doe # 3, filed under Seal, May 28, 2003.

The agreement between the Plaintiffs and KPMG contained the following pertinent provisions:

> We are pleased you have engaged us to advise you on your investment through …. We will advise you on tax and business issues related to the above referenced investments transaction …. We will review or modify tax strategies that will best meet your needs related to the investment transaction…. We will assist you in evaluating certain tax strategies related to the investment transaction, and [w]e will assist you, your legal counsel, bankers and other advisors with

the implementation of the selected investment strategy.

Exhibit 1, *attached to* Affidavit filed under seal as Exhibit C, *attached to* Plaintiffs' Amended Complaint. As previously noted, there is no evidence of an agreement between the Intervenors and KPMG.

The agreement between Plaintiffs and J & G is of particular interest because it is designed to protect, not the confidentiality of advice provided to the Plaintiffs, but the proprietary information disclosed by J & G to the Plaintiffs.[4] *Id.*

> The confidential proprietary information ("Confidential Information") involves certain financing structures (the "Structures") developed by J & G … that provide economic, financial, business and tax advantages for individuals … through the use of the Structures.
>
> . . . . .
>
> Undersigned [Plaintiff] agrees that all Confidential Information is, and shall remain, proprietary to J & G, and that Undersigned will disclose such information only to such of its internal personnel to whom such disclosure is necessary to evaluate the Structures…. Undersigned shall not utilize the Confidential Information or any variant thereof in any manner whatsoever without the express, prior written consent of J & G. Any written materials prepared by Undersigned or J & G which discuss the Confidential Information shall be returned to J & G upon request. In the event that Undersigned decides to discuss or present the Confidential Information to a third party, Undersigned will first inform J & G in writing of the name and address of third party. If J & G consents to such disclosure, such third

---

4. Again, the Intervenors did not have an agreement with Wachovia; their agreement was with J & G. However, they have not placed a copy of that agreement in the record. It is unlikely, however, that the agreement would be different than that reached with the Plaintiffs.

party shall, prior to being presented Confidential Information, countersign this letter in the space indicated below.

.　　.　　.　　.　　.

Undersigned acknowledges that neither J & G nor any of its partners ... makes any representation or warranty as to the accuracy or completeness of the Confidential Information. Undersigned agrees that ... J & G ... shall have [no] liability to Undersigned ... relating to or resulting from the use of the Confidential Information.

.　　.　　.　　.　　.

*Undersigned and J & G are acting solely as independent contracting parties, and neither party shall be deemed to be the agent or fiduciary of the other.... Undersigned will be solely responsible for the evaluation of the financial, tax and accounting consequences of the Structures and J & G shall not be deemed to have made any representations with respect thereto unless separately contracted for.*

*Id.* (emphasis added).

Finally, the Court has reviewed the proposed response to the IRS summons as relates to the Plaintiffs prepared by Wachovia. There is no such document in the record for the Intervenors; however, it is assumed that any such response would be similar if not virtually identical. The response prepared by Wachovia describes the alleged tax shelter as a "short option." Exhibit I, *attached to* Amended Complaint. It provides the name, address and social security number of the Plaintiff, the date on which the option was acquired, and a description of "both the structure of the tax shelter and the intended tax benefits for participants in the tax shelter," as required by the regulation.[5] *Id.;* 26 C.F.R. § 301.6112–1T Q & A 17.

Assuming *arguendo* the argument of the Plaintiffs and the Intervenors that disclosure of their identities would constitute irreparable harm, the issue is whether they had an attorney-client relationship with J & G. The Court cannot conclude that such a relationship existed.

■ "Because this Court's jurisdiction over this case arises from federal law claims, the Court will apply federal law in defining the scope of attorney-client privilege[.]" *United States v. Duke Energy Corp.,* 214 F.R.D. 383, 386 (M.D.N.C.2003) (citing *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.,* 143 F.R.D. 601, 605 (M.D.N.C.1992)).

The purpose of the attorney-client privilege is to encourage the complete disclo-

---

5. Plaintiffs' counsel accuses Wachovia of withholding documents received from the IRS, noting that the information "is organized in eleven numbered sections and clearly appears to respond to some communication, document or correspondence from the IRS other than the summons itself." Exhibit M, *attached to* Plaintiffs' Supplemental Memorandum in further Support of Plaintiffs' Application and Motion for Temporary Restraining Order, filed May 29, 2003. Title 26 C.F.R. § 301.6112–1T Q & A 17 provides eleven sections of information which Wachovia is required to disclose to the IRS. That regulation and those eleven sections are specifically referred to in the IRS summons. This is the format required of Wachovia. Had counsel read the regulation, the aspersions cast against Wachovia would have been unnecessary. Despite this, Wachovia's counsel diligently replied and explained the format. *See, id.,* at Exhibit N. Still, Plaintiffs' counsel states that "on this past Friday afternoon, Plaintiffs learned that Wachovia had compiled a list of eleven categories of information concerning a specific type of "transaction"—a transaction that is not even described in the summons! The revelation of this information—particularly at this late date—is "simply mystifying." Supplemental Memorandum, at 7 (citation omitted). Wachovia did not compile the list of information; the IRS did; and had counsel read that regulation, there would be no mystery.

sure of information between a client and his attorney.... "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar ... and (b) *in connection with this communication is acting as a lawyer;* (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.,* 209 F.R.D. 112, 115 (D.Md. 2002) (quoting *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950)) (other citations omitted); *accord, In re Grand Jury Subpoena,* 204 F.3d 516, 520 n. 1 (4th Cir.2000) ("This Circuit has adopted the classic test for determining the existence of the attorney client privilege [.]"). The language contained in the agreement between each Plaintiff and J & G belies an attorney-client relationship:

> Undersigned [the taxpayer] and J & G are acting *solely as independent contracting parties, and neither party shall be deemed to be the agent or fiduciary of the other.* ... Undersigned will be solely responsible for the evaluation of the financial, tax and accounting consequences of the Structures and *J & G shall not be deemed to have made any representations with respect thereto unless separately contracted for.*

*See* Exhibit 1, *attached to* Exhibit C, *supra* (emphasis added). Instead, J & G, with whom both Plaintiffs and Intervenors

claim an attorney-client relationship, appears to have merely sold a package to them which contained a description of the transaction and a memorandum as to the potential tax consequences stemming from the transaction. The "Executive Summary" of the transaction contains a general description of how to structure such a transaction; there is nothing uniquely tied to the individual taxpayer's financial situation. Indeed, no financial information pertaining to any taxpayer has been inserted into the formula. Nor is there any evidence that any individual taxpayer ever had so much as a conversation with an attorney at J & G.

■ This conclusion is supported by recent decisions involving the same issues as those at hand, as well as the position of the IRS on the sale of "structuring agreements" by law firms.

> As part of an [IRS] examination of KPMG's promotion of and participation in transactions that the IRS contends are tax shelters, the IRS served a total of twenty-five administrative summonses on KPMG seeking information and materials relevant to the investigation.... [T]he first line of Document 22 [contains]: "You have requested our opinion regarding the U.S. *federal income tax consequences* of certain investment portfolio transactions that have been concluded by you ...."

*United States v. KPMG, LLP,* 237 F.Supp.2d 35, 36, 41 (D.D.C.2002).

> This court also notes that many of the documents entitled "Consulting Agreement" ... state that "BDO's Services hereunder do not include ... any legal and/or tax opinions regarding any strategies that may be implemented, and has advised [the parties] to retain a law firm for legal and/or tax opinions on any strategies or transaction they enter into." This provision, among others, un-

der the heading *"No Warranty,"* is inconsistent with certain other provisions of the "Consulting Agreement," especially some provisions set forth in the paragraph labeled *"Services."* This court finds that the "No Warranty" language makes the relationship defined by the "Consulting Agreement" to be different than the common law taxpayer-attorney relationship.

*United States v. BDO Seidman, LLP,* 2003 WL 932365, at *3–4 (N.D.Ill.2003). Likewise, in this case, J & G has taken great care to delineate the relationship between the parties as that of "solely independent contractors" with neither of them being or acting as an agent or fiduciary. There can be no attorney-client relationship without a fiduciary relationship. "The attorney-client privilege protects only *confidential* communications." *In re Grand Jury Subpoena,* 204 F.3d at 521. The "package" sent to the taxpayers in this case did not contain any confidential information, only a prospectus for a tax-advantaged transaction. *Id.* ("In *In re Grand Jury Proceedings,* 727 F.2d 1352, 1358 (4th Cir.1984), we held that client communications with a lawyer relating to the preparation of a prospectus to be used in the enlistment of investors were not confidential even though the prospectus was never published because it 'was to be published to others and was not intended to be kept in confidence.' "). The same "package" was sent by J & G without any tailoring based on individual financial condition. In other words, the same description and opinion memorandum was distributed throughout the country to taxpayers. Moreover, it was delivered, not by J & G, but by Wachovia. "The attorney-client privilege is not intended to permit 'an attorney to conduct his client's business affairs in secret.' " *Id.,* at 522 (quoting *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d 493, 496 (9th Cir.1986)). And, " 'a client may

not "buy" a privilege by retaining an attorney to do something that a non-lawyer could do just as well.' " *Id.,* at 523 (quoting *Federal Rules of Evidence Manual* 698 (7th Ed.1998)). Indeed, in this case there is no evidence that J & G was (1) retained by the client, as opposed to by Wachovia; (2) contacted by the client, except through Wachovia; (3) providing legal advice based on individual financial information, as opposed to selling a tax advantaged structure; and (4) by the terms of its own agreement, acting as an attorney for the "client." The Court finds that the taxpayers cannot manipulate the privilege in such a manner. *Id.*

The Chief Counsel of the IRS, B. John Williams, Jr., gave tax professionals some important insights into the IRS's plans for its "battle against abusive tax avoidance transactions" in a speech he gave to the Texas Federal Tax Institute in San Antonio, Texas, near the Alamo, on 6/6/02, before the KPMG and BDO opinions were announced by the courts. After first noting that the "currently existing set of registration, disclosure and list maintenance rules are not working well," he said that he wanted to "interdict the promotion of abusive tax avoidance transactions at the front end—that is, as the transactions are being marketed and sold to taxpayers...." In citing the recalcitrance of the promoters, he noted that "under the guise of these [attorney-client and taxpayer-accountant] privileges, promoters are claiming that they are not required to disclose to the IRS investor lists, presentation charts, and even K–1s."... The IRS Chief Counsel set forth the IRS's view of the attorney-client and tax practitioner confidentiality privileges, especially as they apply to abusive tax avoidance transactions. [ ] First, he noted that the IRS "will require a taxpayer

claiming the [ ] privilege with respect to opinions promoting these transactions to establish that each such opinion was given in the context of any attorney client relationship [ ] before [the IRS] will accept a privilege claim as potentially valid." In that regard, he further noted that those claiming the privilege will be required to establish:

- The existence of the relationship.
- All of the necessary elements for a privileged communication.
- The absence of dissemination or waiver destroying confidentiality.
- A privilege log revealing enough details about the transactions to allow the IRS to determine whether a significant tax avoidance purpose exists. If such a purpose exists, the privilege would not apply.

70 Prac. Tax Strategies 324, 328–32 (June 2003). If a legal opinion which "might have been privileged when given to the client" is then "circulated to third parties, including investors (*e.g.,* in the case of opinions given to promoters)," it loses its privileged status. *Id.*

"[A]nything a 'promoter' does is not privileged as a promoter intends to market the tax opinion to more than one client. In addition, if the opinion is not based on facts supplied by the clients in the context of rendering legal advice, there is no client communication to protect. Where the tax advice is given based on a set of hypothetical facts not posed by the client (as is often the case in marketed tax avoidance transactions), divulging that advice would not disclose a privileged communication by the client. *There may be no attorney-client relationship with the potential investor; nor may there be an expectation of confidentiality. Finally, when the opinion is marketed, any privilege will be waived.*"

*Id.,* at 332 (emphasis added). This is precisely what transpired in these cases and the undersigned concludes there is no attorney-client privilege between the taxpayers and J & G.

■ As to Wachovia, it acted as a broker to connect the taxpayers with J & G and KPMG. However, there was no fiduciary relationship between Wachovia and the taxpayers; in fact, Wachovia did not know how much money was ultimately invested, the tax benefits received, or from whom the interest was actually acquired. And, as to those taxpayers who actually had letters of engagement with Wachovia, those agreements as well clearly show there was no fiduciary or agency relationship:

You further acknowledge and agree that [Wachovia] is not making and will not make, as a part of this engagement, legal recommendations or advice to you and will have no liability to you … in connection with your implementing or deciding not to implement any strategies, whether or not suggested by your Consultants or any Investment Strategist. You acknowledge that any strategies that you decide to implement may carry substantial investment risk as well as substantial risks of audit, legal challenge and disqualification.

Exhibit F, *attached to* Sadler Affidavit, *supra.* The Intervenors, moreover, had no fiduciary relationship with Wachovia which was contractually tied only to J & G.

■ The Plaintiffs also claim that § 7525 precludes disclosure of the information sought by the IRS. The statute provides:

With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a

taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

26 U.S.C. § 7525(a)(1). However, this general rule is limited to "any noncriminal tax proceeding before the [IRS]" and "any noncriminal tax proceeding in Federal court brought by or against the United States." 26 U.S.C. § 7525(a)(2). This case does not fall within one of these limitations, as there is clearly no proceeding in which the United States has appeared, and the issuance of an administrative summons to a bank, as opposed to a taxpayer, does not appear to be a "tax proceeding" before the IRS.[6]

Moreover, even if this case fell within one of the limitations, the statute further provides that the privilege does not apply "to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter [.]" 26 U.S.C. § 7525(b). Tax shelter is defined as "a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax." 26 U.S.C. § 6662(d)(2)(C)(iii). The language of the tax opinion sold to the Plaintiffs clearly shows the transaction was designed to be a tax advantaged structure and the transaction requires the participation of a corporation. Thus, the privilege does not apply.

 Nor would it in any event for the same reasons as noted above. KPMG does not appear to have provided any actu-

al accounting advice concerning these structures. However, even if such were the case, the advice was in the context of the preparation of tax returns, regardless of whether KPMG or other accountants actually prepared the returns. Section 7525 "does not protect work product, and nothing in the statute suggests that these nonlawyer practitioners are entitled to privilege *when they are doing other than lawyers' work* .... [T]he privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return." *KPMG*, 237 F.Supp.2d at 39. The KPMG

> court held that a "confidential opinion concerning tax advice" issued to a KPMG client was not privileged. In its analysis of this item, denominated as Document 22 on the detailed privilege log that KPMG was required to submit to the court, the court noted that its first line provided that "[Y]ou have requested our opinion regarding the U.S. federal income tax consequences of certain investment portfolio transactions that have been concluded by you ...." Document 22 further continued that "we are of the opinion that under current U.S. federal income tax law there is a greater than 50 percent likelihood ... that the following positions will be upheld if challenged by the [IRS]." ... The court determined it could "arrive at no other logical conclusion than that Document 22 was prepared in conjunction with preparation of a tax return." ... The KPMG case is particularly important because it was decided by the Federal District Court for the District of Columbia, which, under Tax Court Rule 143(a), means that this opinion is controlling precedent for all Tax Court litigation.

70 Prac. Tax Strategies, at 326. In addition, assuming that KPMG provided tax

---

**6.** These limitations explain why the IRS has not intervened in this matter.

advice and that revealing the taxpayers identities would reveal their motives for seeking such advice, the IRS could determine that the taxpayers had participated in the transactions without obtaining their identities from KPMG, *i.e.*, by obtaining them from Wachovia. *KPMG, supra; BDO, supra.*

■ Having concluded that no privilege exists between these taxpayers and J & G and/or KPMG, the Plaintiffs and Intervenors cannot show irreparable harm. Thus, they cannot meet the first requirement for a preliminary injunction.[7] Moreover, the discussion contained *infra* also shows that the Plaintiffs and Intervenors cannot make a showing of possibility of success on the merits. If this Court enjoins Wachovia, it would be placed in the position of defying a court order and risking contempt versus defying the IRS and facing litigation in that arena. When the possibility of success is so remote, it would be patently unfair to place Wachovia in that position. "[W]hile cases frequently speak in the short-hand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied[.]" *Scotts Co.*, 315 F.3d at 284. This balance of the harms tips in favor of Wachovia. *Id.*, at 285. If, in fact, the transactions at issue are "potentially abusive tax shelters," the public interest would lie with disclosure. Since the Plaintiffs and Intervenors have not shown a potentially meritorious claim of privilege, the balance of harm again tips in favor of the public and against the taxpayers.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' motion for leave to file a John Doe complaint, filed May 19, 2003, is **GRANTED;**
2. Plaintiffs' motion for leave to file affidavits under seal, filed May 19, 2003, is **GRANTED;**
3. Plaintiffs' motion for a temporary restraining order and application for a preliminary injunction, filed May 19, 2003 is **DENIED;**
4. Intervenors' motion to intervene, filed May 28, 2003, is **GRANTED;**
5. Intervenors' motion for leave to file John Doe pleadings, filed May 28, 2003, is **GRANTED;**
6. Intervenors' motion to seal file, filed May 28, 2003, is **GRANTED** in part and **DENIED** in part;
7. Intervenors' motion for a temporary restraining order and preliminary injunction, filed May 28, 2003, is **DENIED;**
8. Plaintiffs' motion for leave to file supplemental memorandum in support of the motion for a temporary restraining order and preliminary injunction, filed May 29, 2003, is **GRANTED,** and Plaintiffs' Supplemental Memorandum is hereby deemed filed as of May 29, 2003;
9. Plaintiffs' motion for expedited discovery, filed May 29, 2003, is **DENIED** as moot and frivolous;

---

**7.** The Intervenors also state claims based on replevin, breach of the Right to Financial Privacy Act and breach of contract. Such claims, if extant, would not give rise to irreparable harm; indeed, the Intervenors do not so argue. As to the argument that the summons is overbroad, the document which Wachovia purports to provide to the IRS is concise, clear and not overbroad. Therefore, it is of no moment whether the summons arguably is, an argument which the Court is not convinced is of merit.

10. Intervenors' supplemental motion to seal the affidavit disclosing the identities of the John and Jane Doe Intervenors, filed June 10, 2003, is **GRANTED;** and

11. Intervenors' supplemental motion to seal the Intervenors' reply, filed June 18, 2003, is **DENIED** because there is no confidential information contained within the reply.