**John DOE 1 and John Doe 2, Plaintiffs,**

**v.**

**KPMG, L.L.P., Defendant,**

**UNITED STATES OF AMERICA,
Intervenor–Defendant.**

**No. Civ.3:03–CV–2036–H.**

United States District Court,
N.D. Texas,
Dallas Division.

April 12, 2004.

Robert H. Albaral, Baker & McKenzie, Dallas, TX, Gregory S. Lynam, Thomas V. M. Linguanti, Baker & McKenzie, Chicago, IL, for Plaintiffs.

Kevin M. Dinan, Melissa Bezanson Shultz, King & Spalding, Washington, DC, Timothy W. Mountz, Baker Botts, Dallas, TX, for Defendant.

Stuart D. Gibson, US Dept of Justice, Washington, DC, for Intervenor–Defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Plaintiffs' Motion for Summary Judgment, filed March 5, 2004; Defendant KPMG, L.L.P.'s Response to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment, filed March 26, 2004; and Plaintiffs' Amended Reply, filed April 5, 2004. Also before the Court are Intervenor–Defendant United States of America's Motion to Dismiss, filed April 2, 2004; Defendant KPMG's Response, filed April 5, 2004; and Plaintiffs' Response, filed April 5, 2004. Because the Court has determined that it needs to consult matters outside the complaint to decide the motion to dismiss, the Court will treat the motion to dismiss as a motion for summary judgment.[1] See Fed.R.Civ.P 12(b). In their Motion for Summary Judgment, Plaintiffs John Doe 1 and John Doe 2 ("Plaintiffs") request the Court to enter a permanent injunction preventing Defendant KPMG, L.L.P. ("KPMG") from disclosing each Plaintiff's identity to the Internal Revenue Service ("IRS") unless and until an adversarial summons enforcement action is instituted by the United States Government to compel such disclosure and a court orders

1. The Government, in accordance with Federal Rule of Civil Procedure 12(b), asked the Court to treat its Motion to Dismiss as a Motion for Summary Judgment if the Court decided that it needed to consult matters outside the pleadings. Because the Court consulted the Joint Stipulation of Facts and Exhibit E to Defendant KPMG's Response to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment, the Court treats the Government's Motion to Dismiss as a Motion for Summary Judgment. The Court decided that it did not need to give the Government a reasonable opportunity to present all material made pertinent to such a motion because the Government had already had a chance to respond to Plaintiffs' Motion for Summary Judgment and to submit any material it believed necessary to that motion. See Fed.R.Civ.P. 12(b).

such disclosure. Plaintiffs premise their request on § 7525 of the Internal Revenue Code (I.R.C.) which creates a confidentiality privilege for communications between a taxpayer and a federally authorized tax practitioner. *See* I.R.C. § 7525(a). Defendant KPMG cross-moves for summary judgment, requesting that the Court deny Plaintiffs' motion. Intervenor–Defendant United States of America also asks that the Court deny Plaintiffs' motion and find that the § 7525 privilege does not apply to protect Plaintiffs' identities. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the Opinion for the reasons stated below that Plaintiffs' Motion for Summary Judgment should be **DENIED**, and Defendant KPMG's Cross–Motion for Summary Judgment and Intervenor–Defendant United States of America's Motion to Dismiss, which the Court treats as a Motion for Summary Judgment, should be **GRANTED**.

## I. BACKGROUND

Plaintiffs John Doe 1 and John Doe 2 are taxpayers, as defined in I.R.C. § 7701(a)(14), for the years 2000 and 2001. (Joint Stipulation of Facts[2] at ¶ 7.) Both Plaintiffs engaged Defendant KPMG to "render tax consulting services regarding investments through particular limited liability companies" and to "prepare each Plaintiff's federal income tax returns," both their individual returns and their S corporation returns. (*Id.* at ¶ 8–9, 11.) Defendant KPMG is a federally authorized tax practitioner as defined in I.R.C. § 7525(a)(3)(A). (*Id.* at ¶ 8.)

The engagement agreement between Plaintiffs and KPMG provides that "[a] confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between KPMG personnel and Client regarding federal tax

advice provided pursuant to this engagement." (*Id.* at ¶ 11.) It explains that "[b]y retaining KPMG, Client agrees that KPMG is instructed to claim the privilege on Client's behalf, with respect to any applicable communications, up until such time as Client may waive such privilege in writing." (*Id.*) Additionally, the engagement letter also states "Client understands that KPMG makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication and agrees to hold KPMG harmless should the privilege be determined not to apply to particular communications." (*Id.*)

In April 2002, KPMG received administrative summons from the IRS, "seeking information as to the names of its clients and documents with respect to certain types of transactions, including, but not limited to, a summons relating to transactions that are the same as, or substantially similar to those described in Notice 2000–44, 2000–36 I.R.B. 255 ("Notice 2000–44 Summons" or "summons")." (*Id.* at ¶ 1.) In late August 2003, KPMG notified Plaintiffs that it believed Plaintiffs' names were responsive to the summons, and that KPMG intended to disclose Plaintiffs' names and relevant documents not subject to I.R.C. § 7525(a), the attorney-client privilege, or the attorney work product privilege. (*Id.* at ¶ 2.) "Plaintiffs advised KPMG that [they] wished to invoke the tax advisor privilege under [I.R.C.] § 7525(a), and instructed KPMG not to disclose to the IRS Plaintiffs' names in response to the Notice 2000–44 Summons or any other summons, or to take any other action that would waive Plaintiffs' privilege." (*Id.* at ¶ 3.) KPMG informed Plaintiffs that it could not guarantee that it would not disclose the Plaintiffs' identities and other

---

**2.** Plaintiffs and Defendant KPMG filed the Joint Stipulation of Fact as part of the appen-

dix to their respective motions. (*See* Pl.s' App. at 3–8; Def.'s App. at 3–8.)

information that it believed was responsive to the IRS summons and not subject to any privileges. (*Id.*)

Plaintiffs filed this case on September 9, 2003, seeking injunctive and declaratory relief.[3] "On September 11, 2003, the parties filed a Stipulation and Agreed Order whereby KPMG agreed not to disclose to the Government of the United States (including the IRS), the identities of Plaintiffs or any documents or other information relating to Plaintiffs or relating to their transactions that are the subject of this action until the Court enters final judgment on the merits of the privilege issue raised." (*Id.* at ¶ 5.) Plaintiffs filed their motion for summary judgment on March 5, 2004.

Before KPMG had responded to Plaintiffs' Motion for Summary Judgment, the United States of America (the "Government") moved to intervene as a defendant to protect its interests and the public fisc, claiming that, on average, participants in the tax shelter identified in Notice 2000–44 Summons reported between $2 million and $6 million less per year in federal income taxes than they should have reported. (*See* Emergency Motion to Intervene, filed March 25, 2004.) The Government asserts that this resulted in tax benefits between $4 million and $12 million to the two Plaintiffs for year 2000. (*Id.*) Particularly, the Government was concerned that, while this case is pending, the statute of limitations in which the IRS can still determine and assess additional income taxes from Plaintiffs may expire.[4] (*Id.*) The Court granted the Government's Motion to Intervene on March 25, 2004, and denied Plaintiffs' Motion for Reconsideration on April 2, 2004.

Defendant KPMG responded to Plaintiffs' Motion for Summary Judgment on March 26, 2004, and filed a Cross–Motion for Summary Judgment that same day. Intervenor–Defendant United States filed a Motion to Dismiss, which the Court construes as a Motion for Summary Judgment, on April 2, 2004. (*See* Mot. to Dismiss at 1–2.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED.R.CIV.P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Innovative Database Systems v. Morales*, 990 F.2d 217 (5th Cir.1993). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir.1998) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

---

3. The Court received Plaintiffs Complaint on September 8, 2003. The Plaintiffs filed their Motion for Leave to File a John Doe Complaint on September 8, 2003, and granted the motion September 9, 2003. The Complaint was subsequently filed September 9, 2003.

4. By Order entered April 2, 2004, the Court equitably tolled the statute of limitations until this Court issues a final judgment on the merits and for a period of 60 days thereafter.

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir.1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir.1995).

In determining whether genuine issues of fact exist, "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, in the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991).

## III. ANALYSIS

Plaintiffs and KPMG stipulated to all relevant facts and assert that because the only issues left are matters of law, the instant case is ripe for adjudication. The Court agrees and will proceed to decide this case as a matter of law.

In their Motion for Summary Judgment, Plaintiffs "request this Court to enter a permanent injunction against Defendant [KPMG] from disclosing to the United States of America, any of its branches, agencies (including, but not limited to, the Internal Revenue Service), or employees, or to any other party, the identity of John Doe 1 and John Doe 2, or any documentary or other evidence that could reasonably be calculated to lead to the discovery of the identity of John Doe 1 or John Doe 2, prior to the time that a court of competent jurisdiction finally orders the disclosure of such identity pursuant to a summons enforcement action brought by the United States of America as to which Plaintiffs have notice and in which Plaintiffs [have] a fair opportunity to participate through intervention or otherwise." (Pl.s' Mot. at 3–4.) Plaintiffs assert two principal reasons they believe entitle them to a permanent injunction: 1) "each Plaintiff has a good faith belief that the disclosure of such Plaintiff's identity to the IRS would result in the disclosure of confidential communications between that Plaintiff and KPMG that are protected under section 7525" and "KPMG has a fiduciary duty to keep each Plaintiff's identity confidential unless and until KPMG is instructed in a final order of a court of competent jurisdiction to disclose such identities to the IRS pursuant to a summons enforcement action brought by the Government as to which Plaintiffs have notice and in which Plaintiffs have a fair opportunity to participate through intervention or otherwise"; and 2) "even if the Government had petitioned for such an order, because the disclosure of the Plaintiffs' identities will disclose confidential communications between each Plaintiff and KPMG, such identities are protected from disclosure by the federally authorized tax practitioner privilege of section 7525." (*Id.* at 6–7.)

KPMG argues that for the Court to grant Plaintiffs' permanent injunction, Plaintiffs must demonstrate actual success on the merits. (Def.'s Br. at 1.) Because Plaintiffs' identities are not privileged under § 7525, KPMG argues, the Court cannot grant the permanent injunction prohibiting KPMG from disclosing Plaintiffs' identities to the Government. The Government adopts KPMG's arguments. (Mot. to Dismiss at 1.)

## A. STANDARD FOR PERMANENT INJUNCTION

■ "Any injunctive relief is considered 'an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'" *Harris County v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 312 (5th Cir.1999) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)). Plaintiffs must therefore establish the following four elements for the Court to grant their request for a permanent injunction: 1) actual success on the merits; 2) an irreparable injury if the injunction is not granted; 3) the injury to the plaintiffs must outweigh the injury to the defendant; and 4) the granting of the permanent injunction must not disserve the public interest. *See id.; Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex.App.—Houston [1st Dist.] 2001, no pet.) ("A party seeking a permanent injunction must also plead and prove an irreparable injury for which no adequate remedy at law exists.")).

Plaintiffs contend that the Court need not reach the ultimate issue of whether § 7525 actually creates a privilege as to Plaintiffs' identities before it grants a permanent injunction. (*See* Pl.'s Br. at 14.) Plaintiffs argue that they only need prove that they have a good faith defense to the summons in order to prove that disclosure would be a breach of KPMG's fiduciary duty. (*See* Pl.'s Reply Br. at 10–11.) Plaintiffs' contention is premised on the idea that a "good faith" belief that their identities are privileged is all that is required to enforce KPMG's fiduciary duty to not disclose confidential information by permanent injunction. (*See* Pl.'s Br. at 10–13.) In support of their position, Plaintiffs rely on *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), in which the Supreme Court indicated in dicta that noncompliance with a summons issued by the IRS "is not subject to prosecution [under § 7210 of the I.R.C.] where the summons is attacked in good faith" and that a person affected by the summons may restrain compliance by the third party to whom the summons were issued until compliance is ordered by a court of competent jurisdiction. *Reisman*, 375 U.S. at 447, 84 S.Ct. 508. Plaintiffs ignore, however, and the *Reisman* opinion did not address, that Plaintiffs must prove actual success on the merits for the Court to grant a permanent injunction. *See Amoco Prod. Co.*, 480 U.S. at 546 n. 12, 107 S.Ct. 1396.

■ The Court interprets the confidentiality agreements entered into between Plaintiffs and KPMG to require only that KPMG claim the § 7525 privilege on Plaintiffs' behalf "with respect to any applicable communications." Therefore, if the communication is not privileged under § 7525, KPMG will not breach its fiduciary duty by disclosing such information. The Court concludes that the ultimate issue in the

instant case, therefore, must be whether Plaintiffs' identities are privileged pursuant to § 7525 such that KPMG would be breaching its fiduciary duty to release that information. For the reasons discussed below, the Court concludes that Plaintiffs do not have a privilege claim as to their identities.

## B. ANALYSIS OF PRIVILEGE CLAIM

■ The Internal Revenue Code creates a confidentiality privilege for certain communications between a taxpayer and a federally authorized tax practitioner. I.R.C. § 7525(a). It reads:

> With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

§ 7525(a)(1). The Court must, therefore, look to the law of attorney-client privilege to inform its interpretation of the taxpayer-federally authorized tax practitioner privilege. *Accord, United States v. BDO Seidman,* 337 F.3d 802, 810 (7th Cir.2003), *cert. denied sub nom., Roes v. United States,* ―― U.S. ――, 124 S.Ct. 1410, 158 L.Ed.2d 78 (2004).

A communication is only protected by the attorney-client privilege when "it is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential." *In re Grand Jury Proceedings Auclair,* 961 F.2d 65, 70 (5th Cir.

1992) (quoting *United States v. Melvin,* 650 F.2d 641, 645 (5th Cir.1981)). A client's identity is considered a confidential communication and subject to the attorney-client privilege only when revealing the identity of the client would itself reveal a confidential communication. *See In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena,* 926 F.2d 1423, 1431 (5th Cir.1991). This extends to "protect a disclosure that would reveal the confidential motive for retention of the attorney." *Id.* (citations omitted). However, "[i]nquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege." *Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir.1999). *See also United States v. Long,* 328 F.Supp. 233, 235–36 (D.C.Mo.1971) (holding that the nature of legal services rendered is not subject to the attorney-client privilege).

■ In the instant case, Plaintiffs argue that by revealing their names in response to the Notice 2000–44 Summons, KPMG would be revealing to the IRS not just their identities, but also the underlying communications regarding the tax shelter described in Notice 2000–44, including their purpose and motivation for entering into the transaction.[5] (*See* Pl.'s Br. at 14; Pl.'s Reply Br. at 12.) The Court finds Plaintiffs' argument unpersuasive. First, Plaintiffs do not identify the particular "underlying communication" that would be revealed by revealing Plaintiffs' participation in the tax shelter described in Notice 2000–44. Disclosing Plaintiffs' identities to the IRS in response

---

**5.** Plaintiffs also argue that the descriptions in Notice 2000–44 regarding the tax shelter are so detailed that revealing Plaintiffs' identities will reveal everything Plaintiffs and KPMG discussed regarding the tax shelter. Again,

Plaintiffs do not provide any specific examples so that the Court can evaluate whether the information described is sufficiently detailed.

to the Notice 2000–44 Summons only reveals Plaintiffs' participation in these shelters; it does not reveal any confidential communication made regarding these tax shelters. *See BDO Seidman*, 337 F.3d at 812 (concluding that no confidential communication of tax advice, other than participation in one of the tax shelters described in the summonses, could be inferred from disclosure of the taxpayers' identity in response to the summons). Additionally, as the United States points out, Plaintiffs' motives for participating in the tax shelter are not confidential, as "virtually any taxpayer who seeks tax advice from an accounting firm is looking for ways to minimize his taxes" or for assurance that he is complying with the tax laws. (*See* U.S.'s Mot. to Dismiss at 5.) *Cf. Nguyen*, 197 F.3d at 206 ("Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the [attorney-client] privilege.").

█ Second, Plaintiffs did not have a reasonable expectation that their identities or their participation in the tax shelter described in Notice 2000–44 would be confidential. The attorney-client privilege, and, therefore, the privilege created by § 7525, "do[] not protect communications between a tax practitioner and a client simply for the preparation of a tax return." *United States v. KPMG L.L.P.*, 237 F.Supp.2d 35, 39 (D.D.C.2002) (citing *United States v. Lawless*, 709 F.2d 485, 488 (7th Cir.1983), for the proposition that the attorney-client privilege does not protect "information transmitted for the purpose of preparation of a tax return")).

Plaintiffs in the instant case transmitted information to KPMG for the purpose of preparing both their personal tax returns and their S Corporation tax returns. (*See* Joint Stipulation of Facts at ¶ 11.) Plaintiffs communicated to KPMG their participation in the tax shelter described in Notice 2000–44 so that KPMG could properly fill out Plaintiffs' tax returns. Therefore, Plaintiffs' participation in the Notice 2000–44 tax shelter is not a privileged communication because Plaintiffs could not have had a reasonable expectation that it was confidential, or that it would not be disclosed to others, *i.e.*, via their tax returns.[6]

Additionally, Plaintiffs had no reasonable expectation of confidentiality as to their participation in the Notice 2000–44 tax shelter because of the provisions in I.R.C. §§ 6111 and 6112. Section 6111 requires the organizer of a tax shelter to register the tax shelter with the IRS, and § 6112 requires organizers and sellers of tax shelters to maintain lists of investors in tax shelters. The Seventh Circuit has held that these provisions prevent taxpayers from establishing an expectation of confidentiality in their communications regarding participation in a tax shelter. *See BDO Seidman*, 337 F.3d at 812. In the instant case, Plaintiffs argue that *BDO Seidman* is wrong and cannot apply to this case because § 6112 "did not apply to KPMG with respect to the advice it provided to Plaintiffs." (*See* Pl.'s Resp. to Mot. to Dismiss at 7.) Plaintiffs' argument is premised on the definitions in Treasury Regulation § 301.6111–1T of "organizer" or "seller"; Plaintiffs argue KPMG did not meet the definition of either an "organizer" or a "seller" because it did not participate

---

**6.** Indeed, Plaintiffs communicated their participation in the tax shelter to KPMG for the express purpose of including this information on their tax returns. Because the Court has already concluded that disclosure of Plaintiffs' identities in response to the Notice 2000–44 Summons does not disclose any communication between KPMG and Plaintiffs except for their participation in the tax shelter, Plaintiffs could not have reasonably believed their participation in the tax shelter was confidential.

in the entrepreneurial risks or benefits of a tax shelter.[7] (See id.) Even if Plaintiffs thought KPMG would not be required to disclose their identities pursuant to the list maintenance requirements of § 6112, Plaintiffs themselves were required to disclose to the IRS their participation in the event of an audit because they included those losses on their year 2000 tax returns. If Plaintiffs' tax returns were audited, Plaintiffs would be required to explain how the losses resulted. Knowing that any information included on a tax return could be questioned during an audit, Plaintiffs could not have reasonably believed their participation in the tax shelter was confidential.[8] Also, the Court notes that Plaintiffs did not address whether the tax shelter they participated in was subject to the registration requirements of § 6111. The Court, therefore, adopts the Seventh Circuit's conclusion that §§ 6111 and 6112 destroy any reasonable expectation of confidentiality as to participation in a tax shelter. See BDO Seidman, 337 F.3d at 812.

### C. LIMITS OF PRIVILEGE CLAIM IN § 7525(b)

Section 7525(b) limits the application of the taxpayer-federally authorized tax practitioner privilege. It reads:

> The privilege under subsection (a) shall not apply to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).

§ 7525(b). The Government argues that because the transactions Plaintiffs engaged in involved wholly-owned corporations, the § 7525 privilege does not apply. (See Mot. to Dismiss at 8–9.) Plaintiffs argue that § 7525(b) is inapplicable because the communications between Plaintiffs and KPMG were not in connection with the "promotion" of the tax shelter. (See Pl.s' Br. at 16.) Based on the facts currently before the Court, the Court cannot conclude whether the communications at issue fall into this limitation.

### D. PERMANENT INJUNCTION ANALYSIS

The Court concludes that Plaintiffs did not meet their burden to show actual success on the merits as required for entry of a permanent injunction. Plaintiffs have not demonstrated that KPMG would breach its fiduciary duty to disclose Plaintiffs' identities and other non-privileged information in response to the Notice 2000–44 Summons. Because Plaintiffs have not carried their burden to establish all four factors required for entry of a permanent injunction, the Court cannot grant Plaintiffs the relief they seek.

The Court concludes that under the facts of this case Plaintiffs' identities are not protected by the taxpayer-federally authorized tax practitioner privilege found in I.R.C. § 7525(a). Plaintiffs' application for a permanent injunction is DENIED. The

---

7. The Court notes that Plaintiffs' argument only addresses the Treasury Regulation definition of "organizer" and not "seller." (See Pl.'s Resp. to Mot. to Dismiss at 8 ("These non-contingent fees did not constitute entrepreneurial risk and the firm was, therefore, not an organizer.").)

8. The Government asserts that at the time Plaintiffs' participation in the tax shelter be-

gan in December 2000, the tax shelter had been identified by the IRS as a potentially abusive tax shelter and that KPMG was under an affirmative duty to maintain a list of participants. (See Mot. to Dismiss at 7.) In light of the Court's reasoning, the Court does not need to address whether KPMG was required to maintain a list of participants pursuant to § 6112.

Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant KPMG's Cross–Motion for Summary Judgment and the Government's Motion to Dismiss, which the Court treats as a Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is **DENIED**; Defendant KPMG's Cross–Motion for Summary Judgment is **GRANTED**; and the Government's Motion to Dismiss, which the Court treated as a Motion for Summary Judgment, is **GRANTED**. Final Judgment will be entered by subsequent order.

The Clerk is **DIRECTED** to remove the seal from the following documents previously filed and ordered sealed: Order Granting Plaintiffs' Motion to File Declarations of John Doe 1 and John Doe 2 Ex Parte and Under Seal, entered September 9, 2003; Declaration of John Doe 1, filed September 9, 2003; Declaration of John Doe 2, filed September 9, 2003; Order Granting KPMG's Motion to File Exhibit E Under Seal, entered March 26, 2004; and Exhibit E of KPMG L.L.P.'s Appendix in Support of Response to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment, filed March 26, 2004. Such documents are hereby unsealed.

SO ORDERED.