**UNITED STATES of America,
Petitioner,**

**v.**

**KPMG LLP, Respondent.**

**No. MISC.NO.02–0295(TFH).**

United States District Court,
District of Columbia.

May 4, 2004.

Stuart D. Gibson, Dept. of Justice–Tax Division, Isaac David Paxman, U.S. Department of Justice, Washington, DC, for Petitioner.

Michael F. Armstrong, Stephen D. Gardner, Kronish, Lieb, Weiner & Hellman, L.L.P., New York City, Robert Stephen Bennett, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Respondent.

## *MEMORANDUM OPINION*

THOMAS F. HOGAN, Chief Judge.

Pending before the Court is the United States of America's Petition to Enforce Internal Revenue Service Summonses. For the reasons set forth below, that Petition, as well as other relief, will be granted.

## I. BACKGROUND / PROCEDURAL HISTORY [1]

As part of an Internal Revenue Service ("IRS") examination of KPMG's promotion

---

1. While much of this Background / Procedural History was presented in the Court's Memorandum Opinion of December 20, 2002, found at 237 F.Supp.2d 35 (D.D.C.2002), it is here presented for the sake of context and clarity.

of and participation in transactions that the IRS contends are tax shelters, the United States filed on July 9, 2002 the instant petition to enforce nine IRS summonses served in January, March, and May 2002. Specifically, on January 28, 2002, the IRS issued a summons requesting information relating to two types of transactions, known as the Foreign Leveraged Investment Program ("FLIP") and the Offshore Portfolio Investment Strategy ("OPIS"). This summons is referred to as the "FLIP/OPIS Summons." *See* Petition to Enforce Internal Revenue Service Summons ("Pet. to Enf.") at 2–3. On March 19, 2002, the IRS issued six additional summonses to KPMG. These summonses are also referred to by the transactions to which they are directed, as the "BLIPS/TRACT/IDV Summons," the "401(k) ACCEL Summons," the " § 6111(c) Summons," the " § 6111(d) Summons," the "Foreign Transactions Summons," and the "MIDCO Summons." *Id.* at 4–6. On May 3, 2002, the IRS issued two more summonses to KPMG, the "Tax Treaty Summons" and the "FOCUS Summons." *Id.* at 6–7.

The IRS contends that although KPMG had produced many boxes of records in response to the FLIP/OPIS Summons and had produced individuals who provided sworn testimony in response to this summons, KPMG failed to fully comply with the summons. *See* Pet. to Enf. at 2–4. The IRS also claims that despite granting KPMG additional time to comply with the summonses issued on March 19 and May 3, KPMG failed to produce much of the responsive material. Therefore, on July 9, 2002, the Government filed the Petition to Enforce Internal Revenue Summonses to enforce these nine administrative summonses issued to KPMG as part of the IRS examination.

KPMG withheld from the IRS certain documents that are responsive to the various summonses on grounds that these documents are privileged, and KPMG provided the IRS with a privilege log of the documents withheld in response to the FLIP/OPIS summons ("FLIP/OPIS privilege log"). The FLIP/OPIS privilege log provides a document-by-document description of the documents withheld from production, "setting forth the document number assigned to each privileged document, the date of the document, the names of the author(s) and recipient(s), a brief description of the contents of the documents, and the privileges applicable to each document." Reply in Opp. to Protective Order at 4–5; *see also* Petition to Enforce at Ex. 3 (the FLIP/OPIS privilege log). Despite the privilege log, however, the IRS asserts that these withheld documents "are not in fact privileged." Petition to Enforce at 3.

KPMG filed a Motion for a Protective Order to avoid the additional burden of preparing a document-by-document privilege log of the materials responsive to the summonses that were withheld on privilege grounds. On September 11, 2002, this Court referred KPMG's Motion for a Protective Order to Magistrate Judge Kay for resolution. Magistrate Judge Kay issued a Memorandum Opinion and Order on September 30, 2002 in which he denied KPMG's motion for the following reason:

> KPMG persuasively argues that the burden of preparing a document-by-document privilege log for the materials withheld would be great. *See* Memorandum at 2 (explaining log would contain at least 8,500 entries). KPMG requests permission to prepare a categorical privilege log instead. This Court acknowledges both the burden of this task and the Court's discretion to permit KPMG to prepare a less burdensome, category-by-category privilege log. *See, e.g., United States v. Gericare Medical Sup-*

*ply Inc.,* No. CIV.A.99–0366–CB–L, 2000 WL 33156442, at *3–4 (S.D.Ala. Dec. 11, 2000) (upholding use of privilege log prepared by category). *However, the difficulty, as the Government points out, is in assessing KPMG's claims of privilege which are not apparent to this Court even from the more detailed privilege log prepared in response to the FLIP/OPIS summons. The essential function of a privilege log is to permit the opposing party, and ultimately the court, to evaluate a claim of privilege. Allowing KPMG to prepare an even less detailed, category-by-category privilege log would not further this determination.*

AK Mem. Op. of 9/30/02 at 6–7 (emphasis added).

Magistrate Judge Kay concluded

that the categorical privilege log suggested by KPMG would *not* provide the trial court with sufficiently detailed information to make a determination on the validity of the privileges asserted. This Court finds that Chief Judge Hogan will be better able to evaluate the asserted privilege claims after reviewing *in camera* the details contained in the FLIP/OPIS privilege log accompanied by a random sample of the documents falling within each category of the privileges KPMG has asserted. This will assist Chief Judge Hogan in determining whether the FLIP/OPIS privilege log provides adequate detail to make a ruling on the validity of the claimed privileges, by affording the Court an opportunity to compare the sufficiency of the document description contained in the privilege log with the actual documents, and ultimately determining the validity of KPMG's assertion of privilege.

Accordingly, KPMG's Motion for a Protective Order is DENIED. In addition, the Court orders that KPMG produce the following numbered documents listed in the FLIP/OPIS privilege log to Chief Judge Hogan for an *in camera* review. These documents shall be submitted to the Chief Judge's chambers by close of business on Tuesday, October 1, 2002. Document numbers: 22–28, 42–51, 158–161; 435–447, 537–547, 549, 815–825, 835–870, 976–987, 1019–1034, 1040–1051, 1133–1148.

*Id.* at 7–8 (emphasis added).

This Court received the above numbered documents on October 1, 2002 and, after conducting an *in camera* review, the Court could "only state with confidence that four (4) out of thirty (30) (i.e., 13.3 percent) of the randomly selected privilege log entries are completely supportable." *United States v. KPMG,* 237 F.Supp.2d 35, 48 (D.D.C.2002). The Court therefore referred this matter to retired Magistrate Judge Patrick J. Attridge, who agreed to serve as a Special Master. Magistrate Judge Attridge conducted an examination of the withheld documents, evaluated the asserted privileges, and filed an initial Report and Recommendation on January 27, 2003 and a final Report and Recommendation on October 10, 2003.[2] The Petition was held in abeyance while the Court reviewed the final Report and Recommendation and the objections filed thereto pursuant to Fed.R.Civ.P. 53.

The Court conducted a hearing on April 1, 2004. That hearing served as both a hearing on the report and as an opportunity for the parties to update the Court as to any recent developments related to this matter. During that hear-

---

**2.** The Court would be remiss in failing to mention the thorough and steadfast job performed by Magistrate Judge Attridge in this regard. Judge Attridge performed yeoman's work without remuneration, and his efforts are greatly appreciated by the Court.

ing, the Court learned that KPMG's board of directors had agreed to waive in this matter KPMG's own attorney-client privilege and attorney work product privilege. Counsel for the Petitioner represented to the Court that the two main issues remaining for the Court to decide are (1) whether KPMG must release the identity of one of its clients who allegedly participated in a "CLAS" tax shelter and (2) issues surrounding the 26 U.S.C. § 7525 Confidentiality Privilege. Counsel for the Respondent generally agreed with those representations, but noted that there were still several attorney-client issues pending before the Court.

## II. LEGAL STANDARD

### A. Special Master—Report and Recommendation

The Court must decide *de novo* all objections to conclusions of law made or rec-

ommended by a master. Fed. R. Civ. P 53(g)(4). Further, except in circumstances not present in the instant case, the Court must also decide *de novo* all objections to findings of fact made or recommended by a master. Fed. R. Civ. P 53(g)(3).

### B. Certain privileges

The Court herein incorporates its previous discussion of the legal standard for the attorney-client privilege and the attorney work product doctrine. *See KPMG*, 237 F.Supp.2d at 39–41. As case law regarding 26 U.S.C. § 7525 has developed since the Court's December 20, 2002 Memorandum Opinion, however, a discussion of the legal standard surrounding that privilege is warranted.

26 U.S.C. § 7525[3] was enacted on July 22, 1998 and provides a limited confiden-

---

**3.** Section 7525 is entitled "Confidentiality Privileges Relating to Taxpayer Communications," and reads in its entirety as follows: (a) Uniform application to taxpayer communications with federally authorized practitioners.—

(1) General rule.—With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

(2) Limitations.—Paragraph (1) may only be asserted in—

(A) any noncriminal tax matter before the Internal Revenue Service; and

(B) any noncriminal tax proceeding in Federal court brought by or against the United States.

(3) Definitions.—For purposes of this subsection—

(A) Federally authorized tax practitioner.—The term "federally authorized tax practitioner" means any individual who is authorized under Federal law to practice before the In-

ternal Revenue Service if such practice is subject to Federal regulation under section 330 of title 31, United States Code.

(B) Tax advice.—The term "tax advice" means advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice described in subparagraph (A).

(b) Section not to apply to communications regarding corporate tax shelters.—The privilege under subsection (a) shall not apply to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).
26 U.S.C. § 7525 (West 2002).

26 U.S.C. § 6662(d)(2)(C)(iii) defines "tax shelter" and reads as follows: For purposes of this subparagraph, the term "tax shelter" means—

(I) a partnership or other entity,

(II) any investment plan or arrangement, or

(III) any other plan or arrangement,

if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax.

tiality privilege for communications between a taxpayer and a tax practitioner. This "statute protects communications between a taxpayer and a federally authorized tax practitioner 'to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.'" *United States v. Frederick*, 182 F.3d 496, 502 (7th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1157, 145 L.Ed.2d 1070 (2000), (quoting 26 U.S.C. § 7525(a)(1)). Following as it must the text of § 7525, this Court addresses any claims of § 7525 privilege in the same manner as it does for the attorney-client privilege. The new statute "does not protect work product," and nothing in the statute "suggests that these nonlawyer practitioners are entitled to privilege *when they are doing other than lawyers' work* ...." *Id.* (emphasis added). Accordingly, through application of the plain meaning of the statute and the persuasive guidance of the *Frederick* court, this Court found that the privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return. *See KPMG*, 237 F.Supp.2d at 39; *see also United States v. Lawless*, 709 F.2d 485, 488 (7th Cir.1983) (finding that "information transmitted for the purpose of preparation of a tax return, though transmitted to an attorney, is not privilege information").

Several recent pertinent cases shed further light on this issue. The first is *United States v. BDO Seidman*, 337 F.3d 802 (7th Cir.2003). After the Seventh Circuit set forth an exhaustive analysis of the § 7525 privilege, it held, *inter alia*, that clients' "participation in potentially abusive tax shelters is information ordinarily subject to full disclosure under the federal tax law." *Id.* at 812. Further,

Congress has determined that tax shelters are subject to special scrutiny, and anyone who organizes or sells an interest in tax shelters is required, pursuant to I.R.C. § 6112, to maintain a list identifying each person to whom such an interest was sold. This list-keeping provision precludes the Does from establishing an expectation of confidentiality in their communications with BDO, an essential element of the attorney-client privilege and, by extension, the § 7525 privilege. At the time that the Does communicated their interest in participating in tax shelters that BDO organized or sold, the Does should have known that BDO was obligated to disclose the identity of clients engaging in such financial transactions. Because the Does cannot credibly argue that they expected that their participation in such transactions would not be disclosed, they cannot now establish that the documents responsive to the summonses, which do not contain any tax advice, reveal a confidential communication.

*Id.* (internal citations omitted).

The second case is *John Doe # 1 v. Wachovia Corp.*, 268 F.Supp.2d 627 (W.D.N.C.2003), which held that investor lists held by a bank regarding taxpayers it had assisted with potentially abusive tax shelters were not privileged communications. That case involved clients of a bank "who used the bank to facilitate and implement tax advice concerning investment strategies. Legal advice on tax matters was provided by [a law firm] and accounting advice was received from the accounting firm of KPMG, LLP." *Id.* at 629. That court found that no attorney-client relationship existed between the law firm and the clients of the bank who used the bank to facilitate and implement tax advice concerning investment strategies, which could

26 U.S.C. § § 6662(d)(2)(C)(iii) (West 2002).

possibly otherwise support an assertion of attorney-client privilege over investor lists held by bank. The rationale behind the court's decision was that the law firm, to which the bank directed clients, merely sold a package to investors which contained a description of a transaction and a memorandum as to potential tax consequences stemming from the transaction. *See id.* at 633–34. The court also held that if a legal opinion which might have been privileged when given to the client is then circulated to third parties, including investors, it loses its privileged status. *See id.* at 636 (citation omitted).

The third relevant opinion also involves KPMG. *See John Doe No. 1 and John Doe No. 2 v. KPMG LLP, United States, Intervenor,* C.A. No. 03–cv–2036–H, 2004 WL 797719 (N.D.Tex. Apr. 12, 2004). That case involved taxpayer plaintiffs who sought to enjoin KPMG from disclosing their identities to the IRS. Those plaintiffs premised their request on the § 7525 privilege. *See id.* at *2. The court rejected this argument for several reasons. First, "[d]isclosing Plaintiffs' identities to the IRS ... only reveals Plaintiffs' participation in these shelters; it does not reveal any confidential communication made regarding these tax shelters." *Id.* at *5 (citing *BDO Seidman,* 337 F.3d at 812). Further, "Plaintiffs' motives for participating in the tax shelter are not confidential, as virtually any taxpayer who seeks tax advice from an accounting firm is looking for ways to minimize his taxes or for assurance that he is complying with the tax law." *Id.* (internal quotation marks and citation omitted). The court went on to find that

> Plaintiffs' had no reasonable expectation of confidentiality as to their participation in the ... tax shelter because of the provisions in I.R.C. §§ 6111 and 6112. Section 6111 requires the organizer of a tax shelter to register the tax shelter

with the IRS, and § 6112 requires organizers and sellers of tax shelters to maintain lists of investors in tax shelters.... If Plaintiffs' tax returns were audited, Plaintiffs would be required to explain how the losses resulted. Knowing that any information included on a tax return could be questioned during an audit, Plaintiffs could not have reasonably believed their participation in the tax shelter was confidential.... The Court, therefore, adopts the Seventh Circuit's conclusion that §§ 6111 and 6112 destroy any reasonable expectation of confidentiality as to participation in a tax shelter. *See BDO Seidman,* 337 F.3d at 812.

*Id.* at *6.

## III. DISCUSSION

### A. Identity of KPMG client(s) who allegedly participated in tax shelter(s)

The Court was informed on April 15, 2004 that the parties had resolved whether to release to the IRS the name of the particular client who had participated in the CLAS tax shelter, and that KPMG had released the name of that client to the IRS on April 14, 2004. Both parties, however, have advised the Court that they will rely on this opinion to guide them as they deal with the remaining eight outstanding petitions and any issues that arise therein. Accordingly, while the release of the name of the particular client involved in the CLAS tax shelter may be moot, the overall issue of whether KPMG shall identify to the IRS the names of participants in tax shelters is still before the Court.

 Under the rationale set forth above in *United States v. BDO Seidman,* 337 F.3d 802 (7th Cir.2003), *John Doe # 1 v. Wachovia Corp.,* 268 F.Supp.2d 627 (W.D.N.C.2003), and *John Doe 1, John Doe 2 v. KPMG LLP, U.s.,* C.A. No. 03–

cv–2036–H, 2004 WL 797719 (N.D.Tex. Apr. 12, 2004), which this Court adopts fully, the identity of individuals who are clients of KPMG and who have participated in potentially abusive tax shelters must be disclosed to the IRS. KPMG shall have ten days from the date of this Memorandum Opinion and Order to comply fully with this disclosure.

Further, under the jurisdiction granted to this Court by 26 U.S.C. § 7402(a),[4] if the statutory period for the assessment of additional taxes against any participants in these tax shelters whose identities had previously been withheld from the IRS would have expired within sixty days following entry of this Memorandum Opinion and Order, that period is tolled until sixty days after entry of this order. *See* 26 U.S.C. § 6503(a)[5]; *see also John Doe 1, John Doe 2 v. KPMG LLP, U.S.*, C.A. No. 03–cv–2036–H, 2004 WL 718964 at *5 (N.D.Tex. April 2, 2004) (allowing for same).

**B. Documents KPMG claimed were subject to the 26 U.S.C. § 7525 privilege and/or the attorney-client privilege**

As noted above, the Court must decide *de novo* all objections to findings of fact

and conclusions of law made or recommended by the Special Master in this case. Because of this *de novo* review, the Court benefits in this case from the recent development of both case law, as earlier described, and the overall record in this case. Petitioner has long argued to this Court that KPMG falsely asserts that it has never developed, sold or promoted a tax shelter. "KPMG has tried to cloak its withholding of documents with a privilege by asserting that KPMG 'is not a tax shelter organizer, but a professional firm whose tax professionals provide advice and counseling on a one-on-one basis to clients and prospective clients concerning the clients' tax situations.'" Pet'r Objections at 5–6 (quoting KPMG's Answer to Petition ¶ 24). Indeed, "[t]his illusion has also led KPMG to delay—sometimes for years—producing documents about its promotion of tax shelters that the IRS had not been previously aware of." *Id.* at 6.

After carefully reviewing the entire record of this case, the Court comes to the inescapable conclusion that KPMG has taken steps since the IRS investigation began that have been designed to hide its

---

4. 26 U.S.C. § 7402(a) provides as follows:

(a) To issue orders, processes, and judgments.—The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

26 U.S.C. § 7402(a) (West 2002).

5. 26 U.S.C. § 6503(a)(1) provides as follows:

(a) Issuance of statutory notice of deficiency.—

(1) General rule.—The running of the period of limitations provided in section 6501 or 6502 (or section 6229, but only with respect to a deficiency described in paragraph (2)(A) or (3) of section 6230(a)).[FN1] on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

[FN1] So in original. The period probably should not appear here.

26 U.S.C. § 7402(a) (West 2002).

tax shelter activities. In doing so, KPMG has cast doubt over its privilege assertions. Ample evidence exists that leads the Court to this conclusion. For example, as part of its objections to the Special Master's Reports and Recommendations, Petitioner submitted a declaration from IRS Agent Michael A. Halpert. *See generally* Third Halpert Decl. Revenue Agent Halpert indicates that he when he first confronted KPMG with questions about its involvement in the Short Option Strategy ("SOS") tax shelter, KPMG's attorney, Stephen Gardner,[6] initially claimed that KPMG's role was limited to preparing tax returns and giving advice about tax return preparation. *Id.* ¶¶ 6–7. It was not until August 27, 2003, when KPMG delivered 17 boxes of documents to Revenue Agent Halpert's office, that the IRS finally learned that KPMG was involved in developing and selling the SOS tax shelter. *Id.* ¶ 8. Petitioner notes that it "did not petition the Court to enforce that [SOS tax shelter] summons, because in 2002 KPMG assured the IRS that it had fully complied with that summonses." Pet'r Objections at 6 n. 4.

Revenue Agent Halper also states that he participated in a phone conversation on September 9, 2003 with Stephen Gardner.

> During that conversation, Mr. Gardner advised me for the first time that KPMG had prepared a list of participants in the SOS tax shelter, but had delayed providing that list to the IRS, to enable those participants that wanted to keep the IRS from learning their identities to seek relief in the courts to prevent KPMG from disclosing their identities to the IRS.
>
> It was not until September 17, 2003 that KPMG produced a list of SOS customers to the IRS.

Third Halpert Decl. ¶¶ 9–10. Petitioner believes that the timing of this disclosure is significant because "[b]y the time KPMG had told the IRS that it had promoted the SOS tax shelter, and disclosed its customer list ... the 'normal' three-year statute of limitations had likely expired on the IRS's ability to disallow the tax benefits claimed by many of KPMG's customers." Pet'r Objections at 9.

The Court is particularly troubled by evidence uncovered by the Special Master in this case. KPMG appears to have withheld documents summoned by the IRS by incorrectly describing the documents to support dubious claims of privilege. One glaring example of this involves Document 1069. This document is listed in the privilege log as being a "[c]onfidential e-mail communication from KPMG, Ken Jones forwarded to and among KPMG personnel [thereafter listed] discussing application of KPMG strategic analysis to KPMG clients ...." The 26 U.S.C. § 7525 privilege is claimed. After reviewing this document, however, the Special Master found instead as follows:

> This series of e-mails together with an attachment are said to be a discussion of the application of a strategic analysis for a named client. Although the e-mails and attachment discuss a strategic marketing devi[c]e, *there is no discussion of tax advice to any client, much less a named client. This appears to be a notification from one section of KPMG to another advising of a service that is available to help evaluate client investments and protect market share from slippage to competitors who offer a similar service. There has been no showing that this document falls within the scope*

---

**6.** Mr. Gardner is a member of the law firm Kronish Lieb Weiner & Hellman LLP, and he served until late 2003 as co-counsel for KPMG in this matter.

*of § 7525.* It is recommended that this document be produced [to the IRS].

Final Report and Recommendation at 49 (emphasis added).

Another example involves Document 1001, which is listed in the privilege log as being an "[e]-mail communication between KPMG, Angie Napier and Jeffrey A. Eischeid, referring to conversations with R.J. Ruble, Esq., Brown & Wood LLP,[7] about tax advice regarding the transaction." The attorney-client privilege, attorney work product privilege, and 26 U.S.C. § 7525 privilege are claimed; however, the Special Master came to an entirely different conclusion:

> This exchange of e-mails is claimed to be subject to all three privileges. *The lawyer referred to in the e-mails is one with whom KPMG had a business or marketing arrangement and not a true attorney client relationship.* Moreover nothing in the exchange discloses any facts or opinion from or to a lawyer. The attorney client privilege has not been shown to exist. Furthermore, the document has not been shown to have been prepared by a lawyer much less to have been prepared in reasonable anticipation of litigation so as to be protected by the work product privilege. Lastly, the document does not contain tax advice or opinion to a tax payer client. The exchange merely discusses the contents of a template opinion which has been found by Judge Hogan not to be protected from disclosure by § 7525. It is recommended that this document be produced [to the IRS].

Final Report and Recommendation at 68 (emphasis added). Further evidence suggesting that Brown & Wood was not engaged in rendering true legal advice, but

was rather a partner with KPMG in its tax shelter marketing strategy, is found in a 1997 e-mail exchange between Gregg Ritchie at KPMG Los Angeles and Randall A. Hamilton at KPMG Des Moines. In response to Hamilton's question about whether his FLIP customer must pay a fee for the Brown & Wood legal opinion, even if the customer did not request that opinion, Ritchie states:

> If we are found to be a promoter of a tax shelter, the client is not protected from [I.R.C. § ] 6662 penalties by reliance on our opinion only. Also, *our deal with Brown & Wood is that if their name is used in selling the strategy, they will get a fee. We have decided as a firm that B & W opinion should be given in all deals.*

Third Halpert Decl. Ex. A (emphasis added).

This arrangement was carried on for years. For example, Documents 897, 898, and 899 are an exchange of e-mails in September 2000 and May 2001 which the Special Master characterized as relating to "a fee alleged to be due outside counsel by a client of both the outside counsel and KPMG." Final Report and Recommendation at 62. Such a characterization understates the importance of these e-mails, however, for what they really are is additional evidence of the improper arrangement between KPMG and Brown & Wood to further KPMG's tax shelter marketing strategy. On September 21, 2000 at 1:17 p.m., an employee of Brown & Wood wrote to a KPMG employee: "Any news on [the client] and his invoice for $60K issued Dec. 27/99? I hate it when you have to chase after people! Did you guys get paid for this one?" In response to this query,

---

7. In May 2001, the law firms of Sidley & Austin and Brown & Wood merged to become Sidley Austin Brown & Wood.

KPMG employees engaged in an internal debate which reveals that "[the client] never talked to [Brown & Wood], they never gave him an opinion, and he didn't want their opinion. He ... doesn't think he owes this money." E-mail of 09/27/00 at 11:30 a.m. Subsequent e-mails in the same chain involve KPMG employees debating whether the Brown & Wood opinion letter will protect the client from a $1.6 million IRS penalty and whether the client must pay the $60,000 to Brown & Wood via KPMG. A KPMG employee writes that the client "didn't 'stiff' Brown & Wood—He never signed a contract with them, and he paid us what he contracted for." E-mail of 05/15/01 at 11:36 a.m. One e-mail even questions "what good is an opinion [letter] issued after the tax return is filed?" E-mail of 05/15/01 at 2:17 p.m.

In its Memorandum Opinion of December 20, 2002, this Court found that

the attorney-client privilege may be applicable to Document 442 [and, consequently, Documents 539, 540, 822, and 839], assuming that the law firm is employed by the taxpayer client or his/her company rather than by KPMG. (Without this assumption, which appears logical to make in this instance, the Court is faced with the question of whether advice provided by an in-house attorney is of primarily a *legal* nature or a *business* nature.) Examining only both the privilege log and the document itself, as the Court must in determining the validity of the privilege log, the Court believes that this has been established.

237 F.Supp.2d at 44. Since that time, however, the Court has been presented with, *inter alia*, (1) the additional evidence found in the Ritchie–Hamilton e-mail; (2) the evidence uncovered by the Special Master leading to his conclusion that KPMG was improperly claiming attorney-client relationships when in actuality the relationships in question were business or marketing arrangements; and (3) the evidence in Documents 897–899. While such evidence was not before the Court in December 2002, and so the Court was relegated at that time to examining only the privilege log and the documents sought to be withheld, this additional evidence must now be considered as the Court judges the validity of the privilege logs.

Having reviewed the Brown & Wood "opinion letters" through the lens of the newly discovered evidence, the Court finds these opinion letters to be boiler-plate templates that are almost, if not completely, identical except for date, investor name, investor advisor, and dates and amounts of investment transactions. There is little indication that these are independent opinion letters that reflect any sort of legal analysis, reasoned or otherwise. In fact, when examined as a group, the letters appear to be nothing more than an orchestrated extension of KPMG's marketing machine. Regarding any documents that involve opinion letters from the Brown & Wood law firm, however, the Court declines at this time to broadly and definitively state that all of them are not privileged. At this point, it is only fair to shift the burden to KPMG to show that any or all of the Brown & Wood "opinion letters" are privileged by either the attorney-client privilege or the attorney work product privilege. The Court is therefore providing KPMG with two options:

(1) Should KPMG wish to do so, it has ten days from the date of this Memorandum Opinion and Order to submit to the Court a more individualized and detailed privilege log which shows why each Brown & Wood opinion letter should not be produced to the IRS. The Court will then examine again those letters *in camera*, and the Court will notify the parties as to whether a public evidentiary hearing will occur and what witnesses shall be pro-

duced as to this issue. At the conclusion of such review and possible evidentiary hearing, the Court will make a final determination as to whether the letters should be produced.

(2) Alternatively, KPMG has the option of conceding this issue by filing a notice of the same within ten days of the date of this Memorandum Opinion and Order and then immediately producing the opinion letters to the IRS.

Regardless of which alternative KPMG chooses, this Memorandum Opinion will serve as a partial Memorandum Opinion since the Court has not yet definitively resolved the issues surrounding the Brown & Wood letters.[8]

**C. Documents that the Special Master found were protected by the attorney work product privilege**

As part of its *de novo* review, the Court examined the documents that the Special Master found were protected by the attorney work product privilege. *See* Final Report and Recommendation at 62–63 (Documents 897–899), 83–84 (Documents 1125 and 1138), 84–85 (Documents 1139 and 1206), and 87 (Document 1210). Documents 1125 and 1138 are identical, as are Documents 1139 and 1206. These documents and Document 1210 involve e-mails between KPMG counsel and other KPMG employees. While the attorney-client privilege and the attorney work product privilege were originally claimed, the KPMG

board of directors has now agreed "to waive its attorney-client and attorney work product privileges with respect to its own documents for the documents that relate to the tax shelters that the IRS is investigating." Tr. of Apr. 1, 2004 Hrg. at 5–6. Therefore, those documents will be produced.

 Documents 897, 898, and 899 deserve special mention again due to their relevance to KPMG's marketing and sales arrangement with Brown & Wood. All three of these documents are devoid of any showing of contemplated future litigation, except where it is written that the client

> didn't "stiff" Brown & Wood—He never signed a contract with them, and he paid us what he contracted for. Do you think that this series of correspondence where you tell me that I didn't explain the transaction adequately [to the client] will be helpful if we get sued when it is discovered?

E-mail of 05/15/01 at 11:36 a.m. Mere mention of fear of being sued for an action or inaction is not the sort of "anticipation of litigation" which is covered by the attorney work-product doctrine. Further, the attorney-client privilege does not apply here because, *inter alia*, the asserted holder of the privilege here specifically did *not* want to be a client of Brown & Wood. This is quite clear from the fact that he never contracted with the firm and did not want to pay the $60,000 fee that the firm,

---

8. Should the Court conclude, or KPMG concede, that the Brown & Wood letters are not privileged, the Court will amend its Memorandum Opinion of December 20, 2002 in which the Court found "that the attorney-client privilege may be applicable to" Documents 442, 539, 540, 822, and 839—all of which concern or are related in content to legal opinions from Brown & Wood.

Further, while following the guidance of this Court and through no fault of his own, the Special Master applied this Court's now-tenuous December 20, 2002 ruling on this

issue as he examined all of the documents submitted by KPMG. As a result, he recommended that many documents be withheld. *See, e.g.,* Initial Report and Recommendation at 6–7 (listing hundreds of documents); Final Report and Recommendation at 59 (Document 541), 65–66 (Documents 928 and 929). Should this Court determine or KPMG concede that the Brown & Wood letters are not privileged, the Court will not be able to accept the Special Master's recommendation and those documents shall be produced.

through KPMG, was charging him. Finally, for reasons already set forth in this opinion, the § 7525 privilege does not apply. Accordingly, KPMG shall produce these documents to the IRS.

### D. Documents that discuss legal or tax advice, where the documents do not indicate that the discussion was based upon facts communicated in confidence by the client

 There are 141 documents which the Petitioner believes the Special Master erroneously applied the attorney-client privilege and/or the § 7525 privilege. *See* Petitioner's Objections to Reports and Recommendations of Special Master at 21–31. Putting aside for the moment that participation in potentially abusive tax shelters is information ordinarily subject to full disclosure under the federal tax law, in order to be privileged the discussion of legal or tax advice must be based upon information communicated in confidence from the client to the lawyer or tax practitioner. *See United States v. KPMG*, 237 F.Supp.2d 35, 39–40 (D.D.C.2002) (setting forth D.C. Circuit's concise summary of the attorney-client privilege as found in *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984)). KPMG did not support with evidence, and the Special Master did not discuss, that any of these 141 documents discussing legal or tax advice is based upon or contains information communicated in confidence to the lawyers or tax practitioner by a client or a prospective client for the purpose of seeking legal or tax advice. Accordingly, these documents are not privileged and must be released to the IRS.

### E. Documents that support benefits claimed on tax returns filed with the IRS and documents disclosed to non-privileged people

 Petitioner argues that twenty-eight of the documents which the Special Master

recommended be withheld are not privileged because they either support benefits claimed on tax returns filed with the IRS or they are documents that were disclosed to non-privileged people (i.e., disclosed to people who were neither lawyers nor subordinates of lawyers). As part of its *de novo* review, the Court carefully examined the Special Master's final Report and Recommendation in conjunction with both the FLIP/OPIS privilege log and the documents in question. For example, Document 358 is a letter to a lawyer from a person appearing to be a client. The letter recites certain facts regarding insurance issues; however, the letter was copied to a KPMG person (Mike Gray) about whom there is no evidence as to whether he falls within the scope of the attorney-client privilege. Further, KPMG's privilege log does not indicate who Mike Gray is and whether or not he falls within the scope of the attorney-client privilege. It is not proper for either the Special Master or the Court to infer any such fact in the absence of evidence. Accordingly, the attorney-client privilege does not apply to Document 358.

 Regarding the other twenty-seven documents to which the Petitioner disputes the Special Master's recommendation of privilege, the Court finds that they are not privileged because they support items reported on a federal tax return and "the privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return." *KPMG*, 237 F.Supp.2d at 39. Further, as the Court has described in detail above, the § 7525 privilege does not extend to any of documents pertaining to KPMG's activities related to the business of developing and selling tax shelter products.

## F. Documents that the Special Master did not discuss in either Report and Recommendation

The Special Master did not discuss a number of documents listed in KPMG's privilege log. Some of them involved privilege claims that KPMG has since abandoned. Other documents involved privileges that were rejected by the Court in its December 20, 2002 Memorandum Opinion.[9] Still others warrant special mention herein. Documents 193 and 752 were not discussed in either report. Document 193 is listed in the privilege log as being a "[l]egal opinion from Brown & Wood, LLP" to an individual concerning tax advice regarding the transaction. KPMG claims that the document is protected by the attorney-client privilege, the attorney work product privilege, and the § 7525 privilege. This Court has reviewed Document 193 and found it to be a legal opinion letter supporting the KPMG tax products—indeed, exactly the type of questionable opinion letter by Brown & Wood that this Court has discussed above.

■ Document 752 is listed in the privilege log as being a "[m]emorandum of oral advice memorializing meetings with Dennis Ito of KPMG and [certain clients], 'and their attorneys' about tax advice regarding transaction." KPMG claims that the document is protected by the attorney-client privilege, the attorney work product privilege, and the § 7525 privilege. The Court has reviewed Document 752 and found it to clearly relate to a discussion of how the parties would deal with certain tax shelters, the possibility of amending the clients' returns, the possibility of the re-

turns being audited, and ramifications resulting therefrom. Again, this Court cannot approve claims of privilege that arise from participation in potentially abusive tax shelters. This information is ordinarily subject to full disclosure under the federal tax law, and therefore Document 752 must be produced. *See BDO Seidman*, 337 F.3d at 812.

Another document not discussed in the Reports and Recommendations, document 1136, was analyzed by the Court in its December 20, 2002 Memorandum Opinion. *See* 234 F.Supp.2d at 46. At that time, the Court found that "the attorney-client privilege may apply here, as there are arguably legal issues regarding the terms of the agreement being discussed with a KPMG attorney." Now, however, for the same reasons that the attorney-client privilege did not apply to document 358, the Court finds that this memo is not protected by any privilege. Specifically, Document 1136 is a memorandum that was sent to Jim Carney and KPMG counsel Jack Baumann. There is no evidence as to whether Jim Carney falls within the scope of the attorney-client privilege. Further, KPMG's privilege log does not indicate who Jim Carney is and whether or not he falls within the scope of the attorney-client privilege, and no such evidence will be inferred by this Court. Accordingly, in addition to the fact that this Court cannot approve claims of privilege that arise from participation in potentially abusive tax shelters, for this reason the attorney-client privilege does not apply to Document 1136.

Finally, KPMG did not produce to the Court or the Special Master Documents

---

**9.** Documents 50 (237 F.Supp.2d at 43); 1028 (*id.* at 46); 1140, 1141, 1143, and 1144 (*id.* at 47–48); and 1148 (*id.* at 46). The Special Master also did not discuss Document 867, which the Court found in its December 20, 2002 Memorandum Opinion to possibly fall

under the attorney work product privilege. *See id.* at 45. That privilege for this document, however, has since been waived by KPMG's board of directors. *See* Tr. of Apr. 1, 2004 Hrg. at 5–6.

11, 305, and 328. On July 12, 2002, this Court ordered, *inter alia,* that allegations in the Petition not contested by affidavits will be considered as admitted for the purpose of this enforcement proceeding. Therefore, KPMG's failure to produce Documents 11, 305, and 328 has resulted in a waiver of KPMG's right to assert any privilege claims as to those three documents.

In a related vein, KPMG produced to the IRS a supplemental FLIP/OPIS privilege log on November 5, 2003. This log—submitted nearly a month after the Special Master issued his final Report and Recommendation—identified an additional twenty-one documents, and claims that those documents are privileged. Petitioner argues that since KPMG waited until almost a month after the Special Master reported the results of his multi-hundred-hour review of the FLIP/OPIS summonses, it is too late for KPMG to identify more documents in this category that it wishes to withhold. As neither the Court nor the Special Master has reviewed this particular privilege log, however, the Court directs KPMG to review that privilege log and the twenty-one documents in question in light of the holdings of this Memorandum Opinion. Such review shall be accomplished within ten days of the date of this Memorandum Opinion. After such review, should KPMG still believe that any of these twenty-one documents are privileged, KPMG shall immediately deliver to this Court's chambers a copy of such documents and the corresponding privilege log. The Court shall then undertake an *in camera* review and inform the parties if any of these documents are indeed privileged.

10. The Court hesitates to consider the judicial resources that have been wasted as a result of

## IV. CONCLUSION

Overall, the Special Master accurately found that KPMG is misrepresenting its unprivileged tax shelter marketing activities as privileged communications. The Court has lost confidence in KPMG's privilege log since it has been shown to be inaccurate, incomplete, and even misleading regarding a very large percentage of the documents. The claims of privilege under 26 U.S.C. § 7525 are unsupportable for the documents submitted thus far to the Court. With the exception of the Brown & Wood "opinion letters," since the Court has no confidence that either the attorney-client privilege claims or the attorney work product privilege claims asserted by KPMG are valid, KPMG shall produce all of the documents responsive to the summons issued January 28, 2002 related to the OPIS and FLIP transactions.[10] Regarding any documents that involve opinion letters from the Brown & Wood law firm, however, KPMG shall comply with one of the two options presented above by the Court.

For the reasons stated above, the petition filed by the United States to compel KPMG LLP to comply in full with nine summonses issued by the Internal Revenue Service to KPMG between January 28, 2002 and May 3, 2002 is granted. The time periods for such compliance will be set forth in an appropriate Order which will accompany this Opinion.

### ORDER GRANTING PETITION TO ENFORCE SUMMONSES

For the reasons discussed in the accompanying Memorandum Opinion, it is hereby

**ORDERED:**

these improper claims of privilege.

1. The petition filed by the United States to compel KPMG LLP to comply in full with nine summonses issued by the Internal Revenue Service to KPMG between January 28, 2002 and May 3, 2002 [Misc. No. 02–0295 # 1] is **GRANTED**;

2. Within ten days, KPMG shall identify to the IRS any participants in tax shelters that it had previously withheld;

3. Under the jurisdiction granted to the Court by 26 U.S.C. § 7402(a), if the statutory period for the assessment of additional taxes against the participants in the tax shelters whose identities had previously been withheld from the IRS (as referenced in paragraph 2, above) would have expired within sixty days following entry of this Order, that period is tolled until sixty days after entry of this order;

4. The Court having been advised by the parties that KPMG has waived all attorney-client and attorney work product privileges it had previously asserted as justification to withhold documents sought by the IRS with respect to the matters that are the subject of the IRS tax shelter promoter penalty investigation of KPMG, KPMG shall produce to the IRS within ten days all such documents that it had withheld in response to any of the nine summonses at issue in this case;

5. With the exception of the opinion letters issued by the Brown & Wood law firm or its successor, KPMG shall produce to the IRS within ten days all documents responsive to the summons issued January 28, 2002 related to the OPIS and FLIP transactions, including:

A. all documents KPMG claimed were subject to the 26 U.S.C. § 7525 privilege;

B. all documents KPMG claimed were subject to an attorney-client privilege or the attorney work product privilege;

C. all responsive documents not provided to the Special Master before entry of his Final Report on October 9, 2003, including the documents this Court ordered KPMG to produce to the Special Master or that KPMG failed to produce;[1]

D. all responsive documents that contain information disclosed on tax returns or that support benefits claimed on tax returns;

E. all responsive documents disclosed to third-parties outside the context of a legally privileged relationship; and

F. all documents listed in the privilege logs available to the Special Master before he issued his Final Report that were not discussed by the Special Master in either report.

6. Regarding the opinion letters issued by the Brown & Wood law firm or its successor, KPMG has the following two options:

(1) Should KPMG wish to do so, it has ten days from the date of this Memorandum Opinion and Order to submit to the Court a more individualized and detailed privilege log which shows why each Brown & Wood opinion letter should not be produced to the IRS. The Court will then examine again those letters *in camera*, and the Court will notify the parties as to whether a public evidentiary hearing will occur and what witnesses shall be produced as to this issue. At the conclusion of such review and possible evidentiary hearing, the Court will make a final deter-

---

**1.** Paragraph 5.C. does not apply to any of the twenty-one documents from the November 5, 2003 privilege log which KPMG might believe are still privileged. *See* accompanying Memorandum Opinion at 23.

mination as to whether the letters should be produced.

(2) Alternatively, KPMG has the option of conceding this issue by filing a notice of the same within ten days of the date of this Memorandum Opinion and Order and then immediately producing the opinion letters to the IRS.

7. Within ten days, KPMG will produce—or certify to the IRS that it has already produced—all documents responsive to the eight summonses other than the FLIP/OPIS summons, except for those documents that KPMG continues to withhold on a claim of privilege; and

8. Within thirty days, counsel for KPMG and counsel for the United States shall confer about the documents sought in the remaining eight summonses that KPMG continues to withhold, if any, and submit to the Court a written status report describing those documents, and any issues that remain for the Court to decide.

**SO ORDERED.**